**UNITED STATES of America, Plaintiff,**

v.

**Alexander COOPER, et al., Defendants.**

**No. 89 CR 580.**

United States District Court,
N.D. Illinois, E.D.

Dec. 26, 1990.

**620**

Audrea Zopp, Steven Sinnott, Chicago, Ill., for plaintiff.

Jeffrey Urdangen, Cynthia Giacchetti, Diane Ruthman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This is the first case in the country—and so far as this Court knows it is still the only case—in which the United States seeks imposition of the death penalty under the now-two-year-old provisions of 21 U.S.C. § 848 ("Section 848" [1]). Anthony Cooper ("Cooper") and Darnell Davis ("Davis," named in the indictment as "Anthony Davis") are charged in these terms in Count Three of the second superseding indictment (the "Indictment"):

The SPECIAL APRIL 1990 GRAND JURY further charges:

1. The Grand Jury realleges Count Two of this indictment as though fully set forth here.[2]

2. On or about February 6, 1989, at Chicago, in the Northern District of Illinois, Eastern Division,

## ALEXANDER COOPER and ANTHONY DAVIS,

defendants herein, while engaged in and working in furtherance of a continuing criminal enterprise, intentionally killed and counseled, commanded, induced, procured and caused the intentional killing of Robert Parker, and such killing resulted;

In violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Not surprisingly, both Cooper and Davis have loosed a barrage of attacks on the prosecution of that charge,[3] and their numerous motions have now been fully briefed. This memorandum opinion and order deals with all the motions that speak to or implicate the constitutionality of Section 848.

At the outset it should be said that, all things considered, this opinion is shorter than it might have been. That does not of course reflect any lack of appreciation on this Court's part for the gravity of the issues involved, and it certainly does not connote less than full consideration of those issues. Every issue posed by the parties has been canvassed thoroughly—and all the authorities on which they rely (and more) have been read. What has occasioned the shorter treatment of the issues that is reflected in this opinion is not the press of other matters—other matters are *always* pressing—but rather the facts (1) that the parties' briefing of those issues took substantially longer than the parties had originally planned and (2) that we are dealing with a long-established and absolutely firm February 5, 1991 date for the commencement of the anticipated lengthy trial. Because the litigants need as much lead time as possible for preparation, it is important that this Court rule on the multifarious issues posed by the defendants' mo-

---

1. Appendix 1 reproduces Section 848 in its entirety for convenience. Other narcotics-related criminal statutes, also found in Title 21 of the United States Code and its 840 series, will similarly be cited in this opinion simply as "Section —." Although still other criminal statutes drawn from Title 18 of the United States Code will also be cited "Section —," omitting the "18 U.S.C." designation, that should create no confusion, given the total dissimilarity in the sections' numbering from Title 21's 840 series.

2. [Footnote by this Court] Count Two charges Cooper alone with having engaged in a continuing criminal enterprise in violation of Section 848(a) in connection with a conspiratorial distribution of heroin and cocaine over a long period of time—at least seven years.

3. In Davis' challenges to the constitutionality of the death penalty provisions, his own lawyers have been assisted by the voluntary participation of counsel for the Capital Resource Center of Evanston, Illinois.

tions at the earliest possible date—and that has in turn forced the production of a shorter discussion than the extended essay that some of the issues might well have stimulated.[4] In any case, what follows suffices to state this Court's conclusions and the reasons supporting them.

### Constitutionality of Section 848

Cooper and Davis have launched a number of challenges to the constitutionality of the death sentence provisions (mainly but not exclusively under the Eighth Amendment's prohibition of cruel and unusual punishment).[5] No effort will be made to sort those challenges out in their order of importance. Instead the several arguments will be dealt with seriatim.[6]

■ Cooper complains (without citation of supporting authority) about the absence of pretrial discovery as to the matters in aggravation that the government seeks to rely upon in order to underpin the death penalty. That complaint not only lacks any affirmative support in the case law but also ignores the a fortiori negative impact of *Silagy v. Peters*, 905 F.2d 986, 994–97 (7th

Cir.1990). There our Court of Appeals upheld the Illinois death penalty statute against a claim that the absence of any required notice to a defendant that the State would seek the death penalty violated that defendant's federal constitutional rights (the rights to effective assistance of counsel under the Sixth Amendment and to procedural due process under the Fourteenth Amendment). Here, by contrast, Cooper and Davis have been given notice not only of the government's intention to pursue the death penalty but also of the specific aggravating factors on which the government plans to rely in that effort.[7]

As for those aggravating factors, Cooper and Davis advance a number of contentions as to asserted flaws in Section 848 or in the government's compliance with Section 848(h) in that regard. Although none proves to have substantive merit, they will be set out and discussed in turn.

■ First, Cooper Mem. 1 urges:
All of the aggravating factors in subparagraph (n)(1) are inherent in the underlying offense so that this factor is already determined before the death penalty and

4. This should not be mistaken for a suggestion that longer is necessarily better, a false correlation that seems to influence a good deal of judicial opinion writing.

5. Neither defendant has been given leave generally to adopt his codefendant's pretrial motions. Accordingly this opinion's references to Cooper or Davis individually simply reflect which of them advanced particular arguments in his motions. Of course any declaration of unconstitutionality of Section 848 or any of its subsections would redound to the benefit of both defendants.

6. It is worth observing at the outset that this opinion reflects a classic illustration of what to this Court separates the concepts of "activism" and "conservatism" in their special application to persons wearing judicial robes. In this Court's view (however idiosyncratic), the distinction between those labels does not at all equate to the frequently-employed usage that seeks to pigeonhole judges as, for example, "liberal" or "conservative" or perhaps as "strict constructionist" or its opposite number (whatever any of *those* labels may mean). Instead this Court views the "activist" judge as one who, whatever his or her political or philosophical or jurisprudential persuasion, permits it to drive

his or her decisions in a way that inevitably becomes very predictable. By contrast, the "conservative" judge is one who recognizes his or her predilections (the baggage with which all of us become equipped by all of the factors that have shaped our lives) and, having done so, makes an affirmative effort to *avoid* those as the shapers of the conclusions he or she ultimately reaches—a sort of mental version of Charles Atlas' concept of "dynamic tension." This Court's review of the current doctrines in death penalty jurisprudence, to and including the last term of the Supreme Court, would place it in the dissenters' camp on any number of the issues to be dealt with in the text if it were an ultimate decisionmaker. But it is not, and responsible jurisprudence (being a "conservative" judge, if you will) has commanded this Court's strict adherence to the majority views as expressed in current constitutional doctrine.

7. Appendices 2A and 2B reproduce the notices that have been given to Cooper and Davis, as required by Section 848(h)—although as *Silagy* suggests, the Constitution would not necessarily have required such notices. Where defendants have been afforded greater procedural rights than the Constitution commands, they can scarcely complain (at least in constitutional terms) that those rights were not extended even farther.

thus the sentencing body need find only one aggravating factor to impose the sentence of death.

But *Lowenfield v. Phelps*, 484 U.S. 231, 241–46, 108 S.Ct. 546, 552–55, 98 L.Ed.2d 568 (1988) overrode that precise argument in a situation in which the *only* aggravating factor found by the jury at the penalty phase "was identical to an element of the capital crime of which he was convicted" (*id.* at 241, 108 S.Ct. at 552) or "duplicated one of the elements of the crime" (*id.* at 246, 108 S.Ct. at 555). All but two Justices found *that* situation satisfied the "narrowing function" that the Supreme Court has held mandated by the Constitution (*id.* at 244–46, 108 S.Ct. at 554–55). Hence this case again follows a fortiori—for Section 848(k) expressly conditions the potential of a death sentence on the jury's finding not only one of the aggravating factors set out in Section 848(n)(1) (the statutory provision that has been targeted by Cooper's motion) but *also* at least one of the other aggravating factors listed in Section 848(n)(2) through (n)(12).

■ Cooper also contends that Section 848 impermissibly shifts the burden of the proof to a defendant by requiring him or her to establish the existence of mitigating factors by a preponderance of the evidence. But that argument too flies directly in the face of recent Supreme Court precedent, in this case less than a year old. *Walton v. Arizona*, — U.S. ——, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990) held that if the statutory "method of allocating burdens of proof [at sentencing] does not lessen the [prosecution's] burden to prove ... the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circum-

stances sufficiently substantial to call for leniency." [8] In this instance Section 848(j) expressly provides:

> The burden of establishing the existence of any aggravating factors is on the Government, and is not satisfied unless established beyond a reasonable doubt.

That specifically meets the constitutional standard stated in *Walton*.

■ Next Cooper Mem. 2 attacks as "impermissibly vague" and as "afford[ing] the sentencing body no standard whatsoever" the Section 848(k) formula for sentencing—one that calls for the balancing of aggravating and mitigating circumstances. On that score Cooper misses "the fundamental difference between the nature of the guilt/innocence determination ... and the nature of the life/death choice at the penalty phase" (*California v. Ramos*, 463 U.S. 992, 1007, 103 S.Ct. 3446, 3456, 77 L.Ed.2d 1171 (1983)). As for the first of those determinations, the government must meet the beyond-a-reasonable-doubt standard of proof as to every element of the charged offense, and nothing in Section 848 changes that. But on the second decision, the process of weighing multiple interacting factors admits of no such single standard of proof for the balancing of aggravating and mitigating circumstances—as Justice White said for the four-Justice plurality in *Franklin v. Lynaugh*, 487 U.S. 164, 179, 108 S.Ct. 2320, 2329, 101 L.Ed.2d 155 (1988) (citation omitted):

> And we have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.[9]

■ Cooper then mischaracterizes Section 848 as vesting the government with "unfettered discretion" in deciding what

---

8. *Walton* was a 5-to-4 decision, with Justice Scalia's concurrence providing the deciding vote. Although he did not specifically join in Part III of the Court's opinion, from which the quoted language is taken (see his concurring opinion, *id.* 110 S.Ct. at 3059), his expressed agreement "with the Court's analysis of petitioner's first claim" (*id.*)—which included the contention described in this paragraph of the text—makes *Walton* a direct precedent contrary to Cooper's claim.

9. [Footnote by this Court] Nothing in the concurrence authored by Justice O'Connor and joined in by Justice Blackmun (*id.* at 183, 108 S.Ct. at 2332) casts any shadow on that proposition, which may thus be viewed as an accurate reflection of the Court's perception. Indeed, Justice Stevens' dissent, joined in by Justices Brennan and Marshall, does not really derogate from the accuracy of the statement quoted in the text.

evidence may be introduced in aggravation. Instead Section 848(j) specifically limits the proof at the sentencing phase to (1) matters introduced at trial (but that only if the sentencer was not at the trial,[10] or alternatively in the discretion of the *trial judge* and not the government) and (2) information that is found *relevant* to any mitigating or government-identified aggravating factors (again a *judicial* determination, with the judge being authorized to apply precisely the same exclusionary concept that is embodied in Fed.R.Evid. 403). Once more *Silagy* (see 905 F.2d at 996–98), though addressing the Illinois statute rather than Section 848, provides a direct precedent for upholding that entire procedure.

■ In similar fashion both Cooper and Davis advance a void-for-vagueness onslaught against the aggravating factor stated in Section 848(n)(12):

> The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.

If the statute had placed what the British term a "full stop"—a period—after the word "manner," defendants would be right (*Maynard v. Cartwright*, 486 U.S. 356, 363–64, 108 S.Ct. 1853, 1858–59, 100 L.Ed.2d 372 (1988)). But the statute does not—instead it expressly limits the factor to crimes that "involved torture or serious physical abuse to the victim." And by doing so it provides a constitutionally sufficient standard (see *id.* at 364–65, 108 S.Ct. at 1859–60).[11]

■ Davis also argues that Section 848(n)(12) is unconstitutional as applied to the facts of this case. That argument is of course premature—and although it is rejected now for that reason, it may be reraised based on the proof at trial. In reply Davis contends that any such deferral operates to his prejudice by providing a "death-qualified" jury and by potentially forcing

tactical defense decisions because of the potential of a death sentence. But those arguments are unpersuasive, because they ignore the fact that those considerations are simply not ascribable to Section 848(n)(12) under the circumstances of this case—for here the government is asserting various other aggravating factors as well. That means that a death-qualified jury will have to be selected in any event, and defense counsel must plan against the eventuality of a death sentence whether or not the evidence at trial turns out to support the arguable applicability of Section 848(n)(12).

■ Next, Davis alone urges that the aggravating factor in Section 848(n)(8)—that defendant committed the offense "after substantial planning and premeditation"—is both impermissibly vague and also (in its "premeditation" requirement) impermissibly duplicates an element of the underlying offense. Neither argument is persuasive. As for the first of them:

1. "Premeditation" is a term commonly employed and universally understood in the first degree murder context (see, e.g., *United States v. Brown*, 518 F.2d 821, 825 (7th Cir.1975), approving a jury instruction as to the meaning of "premeditated" in Section 1111, defining the federal statutory crime of first degree murder). Indeed, the existence of first-degree murder charges with that invariable requirement in every jurisdiction really forms the thrust of Davis' *second* argument.

2. "Planning" is a commonly understood term, and the "substantiality" requirement is frequently encountered and readily understood in a number of contexts in criminal law (see such cases as *Blystone v. Pennsylvania*, ⸺ U.S. ⸺, 110 S.Ct. 1078, 1084, 108 L.Ed.2d 255 (1990) and *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir.1985)).

---

**10.** That provision is geared to the situation that may occur "if the [sentencing] hearing is held before a jury or judge not present during the trial."

**11.** Indeed, even were that not so, the government argues that *Walton*, 110 S.Ct. at 3056

might be read as suggesting that impermissibly vague statutory factors are curable by appropriate trial court jury instructions. Under the circumstances this Court need not pass on that question.

And as for the second argument, *Lowenfield*, 484 U.S. at 244–46, 108 S.Ct. at 554–55 provides a complete answer.

■ To turn from the aggravating to the mitigating factors, it is really a complete answer to the constitutional challenges mounted by both Cooper and Davis that the Section 848(m) listing is purely exemplary and not at all restrictive: Each defendant has the wholly unfettered power to offer whatever he wishes to make certain that the "capital-sentencing jury be allowed to consider and give effect to *all* relevant mitigating evidence" (*Blystone,* 110 S.Ct. at 1082 (emphasis added)). That power totally takes the wind out of the sails of such arguments as any claimed absence of precision in the statutory terms that speak to whether defendant was "youthful" (Section 848(m)(5)) or had a "significant" prior criminal record (Section 848(m)(6)) or committed the offense under "severe mental or emotional disturbance" (Section 848(m)(7)).[12] And Cooper's other related argument—that the difference between the mitigating factors specifically referred to in the Illinois death-penalty statute and the nonexclusive, nonrestrictive enumeration in Section 848 creates "arbitrary distinctions between Federal and State death penalty defendants" (Mem. 3)—voices a bizarre notion of equal protection unknown to the law.

■ Davis then separately attempts to turn the anti-discrimination directive of Section 848(o)(1) on its head. Congress there provided:

In any hearing held before a jury under this section, the court shall instruct the jury that in its consideration of whether the sentence of death is justified it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or the victim, and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be. The jury shall return to the court a certificate signed by each juror that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be.

It is a total misreading of that provision to say, as Davis does, that he might be barred from presenting potentially mitigating evidence to the jury on any of the subjects referred to in that provision. There is certainly no point in speculating now in abstract terms—instead, if the possibility of mitigation based on any of those factors were to eventuate at the sentencing hearing, this Court would deal with it appropriately on Davis' request at that time.

■ Next both Cooper and Davis argue (without any citation to authority except for Davis' footnote citation to Justice Stevens' dissent in *Spaziano v. Florida,* 468 U.S. 447, 476, 104 S.Ct. 3154, 3170, 82 L.Ed.2d 340 (1984)) a constitutional right to a bench sentencing rather than jury sentencing (Section 848(i)(1)(C) gives the government an effective veto power over any defendant's request in that respect). Davis' effort to rely on that dissent is truly mysterious. In fact Justice Stevens (joined by Justices Brennan and Marshall) there expressed serious reservations about assigning that function to a judge at all:

Deciding upon the appropriate sentence for a person who has been convicted of a crime is the routine work of judges. By reason of this experience, as well as their training, judges presumably perform this function well. But, precisely because the death penalty is unique, the normal pre-

12. Even apart from the nonexclusivity of the challenged factors, it should be noted that *Proffitt v. Florida,* 428 U.S. 242, 257, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976) expressly upheld the "significant prior criminal record" mitigat-ing factor, while *Blystone,* 110 S.Ct. at 1084 did the same as to the "mental or emotional disturbance" concept (as to which see also *Silagy,* 905 F.2d at 1006).

sumption that a judge is the appropriate sentencing authority does not apply in the capital context. The decision whether or not an individual must die is not one that has traditionally been entrusted to judges. This tradition, which has marked a sharp distinction between the usual evaluations of judicial competence with respect to capital and noncapital sentencing, not only eliminates the general presumption that judicial sentencing is appropriate in the capital context, but also in itself provides reason to question whether assigning this role to governmental officials and not juries is consistent with the community's moral sense.

If anything, that would provide powerful support for an argument that a statute mandating the opposite of what Section 848 provides—that is, a *requirement* for judicial death sentencing—might suffer constitutional infirmity. It surely does not suggest the unconstitutionality of a statute withholding that option from a defendant. It is worth observing that defendants' position really reverses the preference for jury sentencing voiced not only in Justice Stevens' just-quoted opinion but also in such cases as *Witherspoon v. Illinois*, 391 U.S. 510, 519 n. 15, 88 S.Ct. 1770, 1775 n. 15, 20 L.Ed.2d 776 (1968)[13] and *Gregg v. Georgia*, 428 U.S. 153, 190, 96 S.Ct. 2909, 2933, 49 L.Ed.2d 859 (1976). More important, it is difficult to accept defendants' contention in light of the nonexistence of any constitutional right of a defendant to waive a jury trial and insist upon a bench trial as to his or her guilt (*Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965); *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1178 (7th Cir.1983)).[14]

Nor does this Court find any persuasiveness in the next set of arguments advanced by Cooper: the grab-bag that his memorandum labels "Miscellaneous." Those contentions merit no more than short shrift:

1. It cannot fairly be said that the existence of prosecutorial discretion in asking for the death penalty "virtually guarantees" that it will be imposed in an arbitrary and capricious manner. That argument is effectively scotched by the numerous cases upholding the constitutionality of statutes conferring such discretion (see, e.g., *Gregg*, 428 U.S. at 199, 96 S.Ct. at 2937; *Proffitt*, 428 U.S. at 254, 96 S.Ct. at 2967; *Jurek v. Texas*, 428 U.S. 262, 274, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929 (1976); *Silagy*, 905 F.2d at 990–94).

2. Except for the consistent statements to the contrary by Justice Marshall and former Justice Brennan, the Supreme Court and its Justices have not found the death penalty unconstitutional *as such*. Nor has Cooper suggested any anti-black motivation on the part of Congress in enacting Section 848 or on the part of the prosecutor in seeking the death penalty here.

3. Section 848(j) eliminates a presentence investigation report for any defendant found guilty under Section 848(e)—but it obviously does so because the hearing provided for under Section 848(j) and the determination under Section 848(k) supplant the judicial sentencing that takes place in all other classes of cases. No constitutional right is implicated in that elimination.

---

**13.** In light of that discussion in *Witherspoon*, it is somewhat ironic that Davis Mem. 29 says of the government's power not to consent to a bench sentencing:

[I]t is tantamount to forum-shopping and it in effect allows the government to "Witherspoon" the judge.

**14.** No significance is to be ascribed to the fact that the Illinois death penalty statute does confer a right on the defendant to elect judicial sentencing—the counterpart of the Illinois-conferred right to a bench *trial*, which does not exist in the federal practice that requires governmental consent (Fed.R.Crim.P. 23(a)). In

fact, still another irony may be noted in that Illinois state-law right of a defendant to waive a jury trial and insist on a bench trial even over the prosecutor's objection. After this opinion had been written and while it was awaiting final transcription, federal indictments were returned in this District charging that criminal cases had been fixed as the consequence of defendants' waivers of jury trials and the bribing of the judges conducting the resulting bench trials— scarcely compelling evidence for the constitutional sanctity of a defendant's right to a bench trial.

**626**

Both Cooper and Davis also complain of the absence of a provision for "comparative proportionality review"[15] in Section 848. But *Pulley*, 465 U.S. at 50–51, 104 S.Ct. at 879–80 has expressly rejected the notion that such absence is a constitutional flaw:

> There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it. Indeed, to so hold would effectively overrule *Jurek* and would substantially depart from the sense of *Gregg* and *Proffitt*. We are not persuaded that the Eighth Amendment requires us to take that course.

Accord, *Silagy*, 905 F.2d at 1000.

In a separate motion Cooper seeks to strike the government's non-statutory aggravating factors identified in its notice to Cooper under Section 848(h)(1)(B) (those are factors 5 through 8 specified in the notice). There are really two facets of the answer to that effort. Either alone would suffice to defeat it, and combined they certainly assure that result.

First of all, because the government's inclusion of additional factors does not relieve it of the burden to prove—beyond a reasonable doubt—both statutory factor Section 848(n)(1) and at least one other statutory factor among those listed in Section 848(n)(2) through (n)(12), Cooper cannot complain that the government may thus have undertaken an *added* burden. For that purpose the only question is whether the additional "information is relevant to the character of the defendant or the circumstances of the crime" (*Barclay v. Florida*, 463 U.S. 939, 967, 103 S.Ct. 3418, 3433, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring))—a test readily met here. Second, the particular added factors that

have been included by the government may not be stricken just because another non-capital criminal statute (Section 1512) proscribes the murder of a witness—where the same act violates more than one criminal statute, the government may choose to proceed under any of them (or all if it chooses) (*United States v. Hermon*, 817 F.2d 1300, 1302 (7th Cir.1987)).[16]

Cooper also urges that Section 848(k) and 848(*l*) are internally inconsistent and void for vagueness. In candor, that notion is simply based on a misreading of the provisions—and the same is true of Cooper's contention that Section 848(e)(1) requires mandatory imposition of the death penalty and is hence violative of the Fifth Amendment. That is either based on a misunderstanding of the statutory language or is another way of attacking its provision for jury sentencing (an issue already dealt with in this opinion).

As for Davis, by separate motion he seeks dismissal of Count Three based on the claimed unconstitutionality of Section 848(e)(1)(A). That motion is predicated on the fact that Davis, unlike Cooper, is not charged with having substantively violated the "continuing criminal enterprise" provisions of Section 848(a) (Count Two of the indictment names Cooper alone as the defendant there). According to Davis, his inclusion in Count Three for the intentional killing of Robert Parker "while engaged in and working in furtherance of a continuing criminal enterprise" invokes a statute that (1) does not give him adequate notice of the proscribed conduct and (2) is unconstitutionally vague and (3) fails to except killings that are justified or are mitigated by circumstances that lessen a defendant's culpability. There is simply nothing to the "in-furtherance-related" argument (see the familiar and often-interpreted provision of

---

**15.** That is the term used to describe a procedure under which a reviewing court "determine[s] whether, considering both the crime and the defendant, the sentence is disproportionate to that imposed in similar cases" (*Pulley v. Harris*, 465 U.S. 37, 44, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984)).

**16.** Not at issue here are the doctrines, applicable under some circumstances, that either limit the doctrine announced in the text or preclude multiple sentencing based on the relationship of the charged offenses of conviction.

Fed.R.Evid. 801(d)(2)(E)), while "continuing criminal enterprise" is defined with adequate precision in Section 848(e). And the final contention ignores the teaching of *Lowenfield,* 484 U.S. at 246, 108 S.Ct. at 555 that the necessary narrowing function for any possibility of capital punishment may be provided by a more-broadly-defined set of capital offenses coupled with the statutory requirement (as here) for jury findings of aggravating circumstances at the penalty phase.

17. Although this by definition is not a constitutional argument, Cooper has also moved for a ruling that if this Court denies his constitutional arguments his counsel should have the right to make the opening and rebuttal final arguments if the case reaches the sentencing stage. That argument, predicated on the fact that Cooper would have the preponderance-of-the-evidence burden of establishing any mitigating factors, is directly contrary to the express provisions of Section 848(j). And because the burden still

## Conclusion

This opinion has been necessarily discursive in nature, because it has been forced to deal with such a broad congeries of arguments advanced by one or both of the defendants here. None of them has prevailed, however—and the end result is that Section 848 is constitutional in all the respects challenged by either Cooper or Davis or both.[17] This trial will proceed as one potentially involving the death penalty for either or both of them.[18]

rests on the government to prove the death-qualifying aggravating factors beyond a reasonable doubt, there is no question as to the constitutionality of the Section 848(j) order-of-argument provision. Cooper's motion is denied.

18. All other motions previously filed by defendants have been fully briefed and will be dealt with by oral rulings on a status date to be set in the immediate future.

## APPENDIX 1

### Penalties

(b) Any person who violates subsection (a) of this section is punishable by a term of imprisonment up to twice that otherwise authorized, or up to twice the fine otherwise authorized, or both, and at least twice any term of supervised release otherwise authorized for a first offense. Except to the extent a greater minimum sentence is otherwise provided, a term of imprisonment under this subsection shall not be less than one year.

### Penalty for second offenses

(c) Any person who violates subsection (a) of this section after a prior conviction under subsection (a) of this section have become final, is punishable by a term of imprisonment up to three times that otherwise authorized, or up to three times the fine otherwise authorized, or both, and at least three times any term of supervised release otherwise authorized for a first offense. Except to the extent a greater minimum sentence is otherwise provided, a term of imprisonment under this subsection shall not be less than one year. Penalties for third and subsequent convictions shall be governed by section 841(b)(1)(A) of this title.

### Penalty for providing or distributing controlled substance to underage person

(d) Any person who violates subsection (a)(1) or (2) of this section

(1) by knowingly providing or distributing a controlled substance or a controlled substance analogue to any person under eighteen years of age; or

(2) if the person employed, hired, or used is fourteen years of age or younger,

shall be subject to a term of imprisonment for not more than five years or a fine of not more than $50,000, or both, in addition to any other punishment authorized by this section.

### Suspension of sentence; probation; parole

(e) In any case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended and probation shall not be granted. An individual convicted under this section of an offense for which a mandatory minimum term of imprisonment is applicable shall not be eligible for parole under section 4202 of Title 18 until the individual has served the mandatory term of imprisonment as enhanced by this section.

### Distribution of controlled substance to pregnant individual

(f) Except as authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally provide or distribute any controlled substance to a pregnant individual in violation of any provision of this subchapter. Any person who violates this subsection shall be subject to the provisions of subsections (b), (c), and (e) of this section.

(Pub.L. 91–513, Title II, § 405B, as added Pub.L. 99–570, Title I, § 1102, Oct. 27, 1986, 100 Stat. 3207–10, and amended Pub.L. 100–690, Title VI, §§ 6452(b)(1), 6459, 6470(d), Nov. 18, 1988, 102 Stat. 4371, 4373, 4378.)

### Editorial Notes

References in Text. "This subchapter", referred to in subsecs. (a) and (f), was in the original "this title" which is Title II of Pub.L. 91–513, Oct. 27, 1970, 84 Stat. 1242, and is popularly known as the "Controlled Substances Act". For complete classification of Title II to the Code, see Short Title note set out under section 801 of this title and Tables volume.

"Subchapter II of this chapter", referred to in subsec. (a), was in the original "title III", meaning Title III of Pub.L. 91–513, Oct. 27, 1970, 84 Stat. 1285. Part A of Title III comprises subchapter II of this chapter. For classification of Part B, consisting of sections 1101 to 1105 of Title III, see Tables volume.

### § 846. Attempt and conspiracy

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

(Pub.L. 91–513, Title II, § 406, Oct. 27, 1970, 84 Stat. 1265, amended Pub.L. 100–690, Title VI, § 6470(a), Nov. 18, 1988, 102 Stat. 4377.)

### § 847. Additional penalties

Any penalty imposed for violation of this subchapter shall be in addition to, and not in lieu of, any civil or administrative penalty or sanction authorized by law.

(Pub.L. 91–513, Title II, § 407, Oct. 27, 1970, 84 Stat. 1265.)

### § 848. Continuing criminal enterprise

### Penalties; forfeitures

(a) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title; except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may

not be less than 30 years and which may be up to life imprisonment, to a fine not to exceed the greater of twice the amount authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in section 853 of this title.

### Conditions for life imprisonment for engaging in continuing criminal enterprise

(b) Any person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a) of this section, if—

(1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and

(2)(A) the violation referred to in subsection (d)(1) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, or

(B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title.

### Continuing criminal enterprise defined

(c) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

### Suspension of sentence and probation prohibited

(d) In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and the Act of July 15, 1932 (D.C.Code, secs. 24–203 to 24–207), shall not apply.

### Death penalty

(e)(1)[1] In addition to the other penalties set forth in this section—

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and

(B) any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of this subchapter or subchapter II of this chapter who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of any Federal, State, or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

(2) As used in paragraph (1)(b), the term "law enforcement officer" means a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, prosecution or adjudication of an offense, and includes those engaged in corrections, probation, or parole functions.

### Hearing required with respect to the death penalty

(g) A person shall be subjected to the penalty of death for any offense under this section only if a hearing is held in accordance with this section.

### Notice by the Government in death penalty cases

(h)(1) Whenever the Government intends to seek the death penalty for an offense under this section for which one of the sentences provided is death, the attorney for the Government, a reasonable time before trial or acceptance by the court of a plea of guilty, shall sign and file with the court, and serve upon the defendant, a notice—

(A) that the Government in the event of conviction will seek the sentence of death; and

(B) setting forth the aggravating factors enumerated in subsection (n) of this section and any other aggravating factors which the Government

will seek to prove as the basis for the death penalty.

(2) The court may permit the attorney for the Government to amend this notice for good cause shown.

### Hearing before court or jury

(i)(1) When the attorney for the Government has filed a notice as required under subsection (h) of this section and the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, the judge who presided at the trial or before whom the guilty plea was entered, or any other judge if the judge who presided at the trial or before whom the guilty plea was entered is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted—

(A) before the jury which determined the defendant's guilt;

(B) before a jury impaneled for the purpose of the hearing if—

(i) the defendant was convicted upon a plea of guilty;

(ii) the defendant was convicted after a trial before the court sitting without a jury;

(iii) the jury which determined the defendant's guilt has been discharged for good cause; or

(iv) after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary; or

(C) before the court alone, upon the motion of the defendant and with the approval of the Government.

(2) A jury impaneled under paragraph (1)(B) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate with the approval of the court that it shall consist of any number less than 12.

### Proof of aggravating and mitigating factors

(j) Notwithstanding rule 32(c) of the Federal Rules of Criminal Procedure, when a defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, no presentence report shall be prepared. In the sentencing hearing, information may be presented as to matters relating to any of the aggravating or mitigating factors set forth in subsections (m) and (n) of this section, or any other mitigating factor or any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section. Where information is presented relating to any of the aggravating factors set forth in subsection (n) of this section, information may be presented relating to any other

aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The Government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death. The Government shall open the argument. The defendant shall be permitted to reply. The Government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless established by a preponderance of the evidence.

### Return of findings

(k) The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factors set forth in subsection (n) of this section, found to exist. If one of the aggravating factors set forth in subsection (n)(1) of this section and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) of this section is found to exist, a special finding identifying any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section, may be returned. A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established for purposes of this subsection, regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If an aggravating factor set forth in subsection (n)(1) of this section is not found to exist or an aggravating factor set forth in subsection (n)(1) of this section is found to exist but no other aggravating factor set forth in subsection (n) is found to

exist, the court shall impose a sentence, other than death, authorized by law. If an aggravating factor set forth in subsection (n)(1) of this section and one or more of the other aggravating factors set forth in subsection (n) of this section are found to exist, the jury, or if there is no jury, the court, shall then consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend that a sentence of death shall be imposed rather than a sentence of life imprisonment without possibility of release or some other lesser sentence. The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.

### Imposition of sentence

($l$) Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death. Otherwise the court shall impose a sentence, other than death, authorized by law. A sentence of death shall not be carried out upon a person who is under 18 years of age at the time the crime was committed. A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability—

(1) cannot understand the nature of the pending proceedings, what such person was tried for, the reason for the punishment, or the nature of the punishment; or

(2) lacks the capacity to recognize or understand facts which would make the punishment unjust or unlawful, or lacks the ability to convey such information to counsel or to the court.

### Mitigating factors

(m) In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider mitigating factors, including the following:

(1) The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

(2) The defendant was under unusual and substantial duress, regardless of whether the duress

was of such a degree as to constitute a defense to the charge.

(3) The defendant is punishable as a principal (as defined in section 2 of Title 18) in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

(4) The defendant could not reasonably have foreseen that the defendant's conduct in the course of the commission of murder, or other offense resulting in death for which the defendant was convicted, would cause, or would create a grave risk of causing, death to any person.

(5) The defendant was youthful, although not under the age of 18.

(6) The defendant did not have a significant prior criminal record.

(7) The defendant committed the offense under severe mental or emotional disturbance.

(8) Another defendant or defendants, equally culpable in the crime, will not be punished by death.

(9) The victim consented to the criminal conduct that resulted in the victim's death.

(10) That other factors in the defendant's background or character mitigate against imposition of the death sentence.

### Aggravating factors for homicide

(n) If the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, the following aggravating factors are the only aggravating factors that shall be considered, unless notice of additional aggravating factors is provided under subsection (h)(1)(B) of this section:

(1) The defendant—

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury which resulted in the death of the victim;

(C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;

(D) intentionally engaged in conduct which—

(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and

(ii) resulted in the death of the victim.

(2) The defendant has been convicted of another Federal offense, or a State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

(3) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.

(4) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

(5) In the commission of the offense or in escaping apprehension for a violation of subsection (e) of this section, the defendant knowingly created a grave risk of death to one or more persons in addition to the victims of the offense.

(6) The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

(7) The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

(8) The defendant committed the offense after substantial planning and premeditation.

(9) The victim was particularly vulnerable due to old age, youth, or infirmity.

(10) The defendant had previously been convicted of violating this subchapter or subchapter II of this chapter for which a sentence of five or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

(11) The violation of this subchapter in relation to which the conduct described in subsection (e) of this section occurred was a violation of section 845 of this title.

(12) The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.

### Right of the defendant to justice without discrimination

(o)(1) In any hearing held before a jury under this section, the court shall instruct the jury that in its consideration of whether the sentence of death is justified it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or the victim, and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be. The jury shall return to the court a certificate signed by each juror that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be.

(2) Not later than one year from November 18, 1988, the Comptroller General shall conduct a study of the various procedures used by the several States for determining whether or not to impose the death penalty in particular cases, and shall report to the Congress on whether or not any or all of the various procedures create a significant risk that the race of a defendant, or the race of a victim against whom a crime was committed, influence the likelihood that defendants in those States will be sentenced to death. In conducting the study required by this paragraph, the General Accounting Office shall—

(A) use ordinary methods of statistical analysis, including methods comparable to those ruled admissible by the courts in race discrimination cases under title VII of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e et seq.];

(B) study only crimes occurring after January 1, 1976; and

(C) determine what, if any, other factors, including any relation between any aggravating or mitigating factors and the race of the victim or the defendant, may account for any evidence that the race of the defendant, or the race of the victim, influences the likelihood that defendants will be sentenced to death. In addition, the General Accounting Office shall examine separately and include in the report, death penalty cases involving crimes similar to those covered under this section.

### Sentencing in capital cases in which death penalty is not sought or imposed

(p) If a person is convicted for an offense under subsection (e) of this section and the court does not impose the penalty of death, the court may impose a sentence of life imprisonment without the possibility of parole.

### Appeal in capital cases; counsel for financially unable defendants

(q)(1) In any case in which the sentence of death is imposed under this section, the sentence of death shall be subject to review by the court of appeals

upon appeal by the defendant. Notice of appeal must be filed within the time prescribed for appeal of judgment in section 2107 of Title 28. An appeal under this section may be consolidated with an appeal of the judgment of conviction. Such review shall have priority over all other cases.

(2) On review of the sentence, the court of appeals shall consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under this section.

(3) The court shall affirm the sentence if it determines that—

(A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(B) the information supports the special finding of the existence of every aggravating factor upon which the sentence was based, together with, or the failure to find, any mitigating factors as set forth or allowed in this section.

In all other cases the court shall remand the case for reconsideration under this section. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence.

(4)(A) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—

(i) before judgment; or

(ii) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(B) In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(5) If the appointment is made before judgment, at least one attorney so appointed must have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court.

(6) If the appointment is made after judgment, at least one attorney so appointed must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of appeals in that court in felony cases.

(7) With respect to paragraphs (5) and (6), the court, for good cause, may appoint another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.

(8) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications,[2] for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

(9) Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10). Upon a finding that timely procurement of such services could not practicably await prior authorization, the court may authorize the provision of and payment for such services nunc pro tunc.

(10) Notwithstanding the rates and maximum limits generally applicable to criminal cases and any other provision of law to the contrary, the court shall fix the compensation to be paid to attorneys appointed under this subsection and the fees and expenses to be paid for investigative, expert, and other reasonably necessary services authorized under paragraph (9), at such rates or amounts as the court determines to be reasonably necessary to carry out the requirements of paragraphs (4) through (9).

### Refusal to participate by State and Federal correctional employees

(r) No employee of any State department of corrections or the Federal Bureau of Prisons and no employee providing services to that department or bureau under contract shall be required, as a condition of that employment, or contractual obligation to be in attendance at or to participate in any execution carried out under this section if such participation is contrary to the moral or religious convictions of the employee. For purposes of this subsection, the term "participation in executions" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

(Pub.L. 91–513, Title II, § 408, Oct. 27, 1970, 84 Stat. 1265; Pub.L. 98–473, Title II, §§ 224(b), 305, Oct. 12, 1984, 98 Stat. 2030, 2050; Pub.L. 98–473, § 224(b), formerly § 224(c), as amended Pub.L. 99–570, Title I, 1005(b)(2), Oct. 27, 1987, 100 Stat. 3207–6; Pub.L. 99–570, Title I, §§ 1252, 1253, Oct. 27, 1986, 100 Stat. 3207–14, 3207–15; Pub.L. 100–690, Title VI, §§ 6481, Title VII, § 7001, Nov. 18, 1988, 102 Stat. 4382, 4387, 4388.)

1 See Codification note

2 The phrase "applications, for writ of certiorari" so in original subsec. (q)(8).

#### Subsec. (d) of this Section Applicable to Offenses Committed Prior to Nov. 1, 1987

Subsec. (d) of this section as in effect prior to amendment by Pub.L. 98–473, § 224(b), read as follows:

#### Suspension of sentence and probation prohibited

(e) In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and section 4202 of Title 18 and the Act of July 15, 1932 (D.C.Code, secs. 24–203 to 24–207), shall not apply.

For applicability of sentencing provisions to offenses, see Effective Date and Savings Provisions, etc., note, section 235 of Pub.L. 98–473, as amended, set out under section 3551 of Title 18, Crimes and Criminal Procedure.

#### EDITORIAL NOTES

References in Text. "This subchapter", referred to in text, was in the original "this title" which is Title II of Pub.L. 91–513, Oct. 27, 1970, 84 Stat. 1242, as amended, and is popularly known as the "Controlled Substances Act". For complete classification of Title II to the Code, see Short Title note set out under section 801 of this title and Tables volume.

"Subchapter II of this chapter", referred to in text, was in the original "title III", meaning Title III of Pub.L. 91–513, Oct. 27, 1970, 84 Stat. 1285. Part A of Title III comprises subchapter II of this chapter. For classification of Part B, consisting of sections 1101 to 1105 of Title III, see Tables volume.

The Civil Rights Act of 1964, referred to in subsec. (o)(2)(A), is Pub.L. 88–352, July 2, 1964, 78 Stat. 252, as amended. Title VII of the Civil Rights Act of 1964 is classified to subchapter VI (section 2000e et seq.) of

chapter 21 of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 2000a of Title 42 and Tables volume.

The Act of July 15, 1932 (D.C.Code, secs. 24–203 to 24–207), referred to in subsec. (d), is not classified to the U.S.C.A.

Codification. The language of section 7001(a)(1) of Pub.L. 100–690 directing the redesignation of subsec. (e) as (f), was incapable of execution in view of a prior redesignation of subsec. (e) as (d) by section 6481(b) of Pub.L. 100–690, leaving this section without a subsec. (f).

Effective Date and Savings Provisions of 1984 Amendment. Amendment by Pub.L. 98–473, § 224(b), effective on the first day of first calendar month beginning thirty six months after Oct. 12, 1984, applicable only to offenses committed after taking effect of sections 211 to 239 of Pub.L. 98–473, and except as otherwise provided for therein, see section 235 of Pub.L. 98–473, as amended, set out as a note under section 3551 of Title 18, Crimes and Criminal Procedure.

GAO Study of the Cost of Executions. Section 7002 of Pub.L. 100–690 provided that:

"(a) Study.—No later than three years after the date of the enactment of this Act [Nov. 18, 1988], the Comptroller General shall carry out a study to review the cost of implementing the procedures for imposing and carrying out a death sentence prescribed by this title [Title VII, subtitles A–O, of Pub.L. 100–690 See Tables volume for classifications to the Code].

"(b) Specific Requirement.—Such study shall consider, but not be limited to, information concerning impact on workload of the Federal prosecutors and judiciary and law enforcement necessary to obtain capital sentences and executions under this Act [see Short Title of 1988 Amendment note under section 1501 of this title].

"(c) Submission of Report.—Not later than four years after date of the enactment of this Act [Nov. 18, 1988], the Comptroller General shall submit to Congress a report describing the results of the study."

#### Code of Federal Regulations

Classification of inmates, see 28 CFR 524.10 et seq.

### § 849. Repealed. Pub.L. 98–473, Title II, § 219(a), Oct. 12, 1984, 98 Stat. 2027.

#### Section Applicable to Offenses Committed Prior to Nov. 1, 1987

This section as in effect prior to repeal by Pub.L. 98–473 read as follows:

§ 849. Dangerous special drug offender sentencing
Notice to court by United States attorney

(a) Whenever a United States attorney charged with the prosecution of a defendant in a court of the United States for an alleged felonious violation of any provision of this subchapter or subchapter II of this chapter committed when the defendant was over the age of twenty-one years has reasons to believe that the defendant is a dangerous special drug offender such United States attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying

APPENDIX 2A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 89 CR 580 |
| | ) | Judge Milton I. Shadur |
| ALEXANDER COOPER, et al. | ) | |

NOTICE

To: ALEXANDER COOPER,
    also known as "Ghost"

**YOU ARE HEREBY NOTIFIED** that in the event of your conviction on Count Three of the superseding indictment in this case, which charges a violation of Title 21, United States Code, Section 848(e)(1)(A), the government will seek the sentence of death.

**YOU ARE FURTHER NOTIFIED** that the government will seek to prove the following aggravating factors as the bases for the death penalty:

1. You intentionally caused the killing of Robert Parker. 21 U.S.C. § 848(n)(1).

2. You procured the commission of the offense by payment, and promise of payment, of a thing of pecuniary value. 21 U.S.C. § 848(n)(6).

3. You committed the offense after substantial planning and premeditation. 21 U.S.C. § 848(n)(8).

4. You committed the offense in an especially heinous, cruel and depraved manner in that it involved serious physical abuse to the victim - Robert Parker. 21 U.S.C. § 848(n)(12).

5. You committed the offense to prevent Robert Parker from cooperating with federal law enforcement officers.

6. You committed the offense to prevent Robert Parker from cooperating as a witness in the grand jury and in court against you and your continuing criminal enterprise.

7. You committed the offense to obstruct, interfere with and impede a federal criminal investigation of you and your continuing criminal enterprise.

8. You committed the offense to discourage and prevent members of your continuing criminal enterprise from cooperating with federal law enforcement officers.

9. At present, the government is unaware of any evidence which would constitute a "mitigating factor", as that term is used in 21 U.S.C. § 848(m).

IRA H. RAPHAELSON
United States Attorney

## APPENDIX 2B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 89 CR 580 |
| | ) | Judge Milton I. Shadur |
| ALEXANDER COOPER, et al. | ) | |

**NOTICE**

To: ANTHONY DAVIS,
also known as "Future"

**YOU ARE HEREBY NOTIFIED** that in the event of your conviction on Count Three of the superseding indictment in this case, which charges a violation of Title 21, United States Code, Section 848(e)(1)(A), the government will seek the sentence of death.

**YOU ARE FURTHER NOTIFIED** that the government will seek to prove the following aggravating factors as the bases for the death penalty:

1. You intentionally killed Robert Parker. 21 U.S.C. § 848(n)(1).

2. You committed the offense as consideration for the receipt, or the expectation of the receipt, of a thing of pecuniary value. 21 U.S.C. § 848(n)(7).

3. You committed the offense after substantial planning and premeditation. 21 U.S.C. § 848(n)(8).

4. You committed the offense in an especially heinous, cruel and depraved manner in that it involved serious physical abuse to the victim - Robert Parker. 21 U.S.C. § 848(n)(12).

DOCKETED

MAY 15 1990

5. You committed the offense to prevent Robert Parker from cooperating with federal law enforcement officers.

6. You committed the offense to prevent Robert Parker from cooperating as a witness in the grand jury and in court against Alexander Cooper's continuing criminal enterprise.

7. You committed the offense to obstruct, interfere with and impede a federal criminal investigation of Alexander Cooper and his continuing criminal enterprise.

8. You committed the offense to discourage and prevent members of Alexander Cooper's continuing criminal enterprise from cooperating with federal law enforcement officers.

9. At present, the government is unaware of any evidence which would constitute a "mitigating factor", as that term is used in 21 U.S.C. § 848(m).

