**UNITED STATES of America, Plaintiff,**

v.

**Phouc H. NGUYEN, Defendant.**

**Criminal Action No. 94–10129–01.**

United States District Court,
D. Kansas.

May 9, 1996.

E. Jay Greeno, Greeno & Boohar, Wichita, KS, David Autry, Oklahoma City, OK, for defendant.

David M. Lind, Office of United States Attorney, Wichita, KS, for the U.S.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court are the following:

(1) Defendant Nguyen's motion for pretrial production of statements of individuals not to be called as witnesses (Doc. 63);

(2) omnibus motion to strike notice of intent to seek the death penalty (Docs. 64, 65);

(3) Motion for adoption of jury selection procedures (Docs. 66, 67); [1]

(4) motion for discovery and inspection of information and evidence in aggravation (Doc. 68);

(5) motion for bill of particulars with respect to notice of intent to seek the death penalty (Docs. 69, 70);

(6) motion for discovery of evidence in mitigation (Docs. 71, 72);

(7) motion for immediate production of Government's witness list (Docs. 73, 74);

(8) motion to compel disclosure of United States Attorney's initial recommendation regarding intent to seek the death penalty (Docs. 75, 76);

(9) supplemental authority and argument RE: brief in support of motion to strike the death notice (Doc. 106); and

(10) Government's responses to Nguyen's motions (Docs. 90–97).

---

1. This motion will be dealt with in a separate order.

## INDEX

BACKGROUND ........................................................... 1531
DISCUSSION ............................................................ 1531
SUBSTANTIVE DEATH PENALTY CHALLENGES .............................. 1531
 I. Overview of the Death Penalty Statute, 18 U.S.C. § 3591, Et Seq. .............. 1532
 II. Constitutionality of the Statutory Definition of the Capital Offense ............. 1532
 III. Constitutionality of Particular Statutory Aggravating Factors .................. 1533
 A. The "Especially Heinous, Cruel, or Depraved Manner" Aggravating
 Factor ...................................................... 1533
 1. Facial Unconstitutionality ...................................... 1533
 2. Particularized Unconstitutionality ................................ 1534
 B. The "Pecuniary Gain" Aggravating Factor ......................... 1534
 IV. Constitutionality of Non–Statutory Aggravating Factors ..................... 1536
 A. Statutory Authority for Non–Statutory Aggravating Factors .............. 1536
 B. Non–Delegation Doctrine, Proportionality Review and Ex Post Facto
 Challenges to Government's Identification of Non–Statutory Aggrava-
 ting Factors ................................................. 1536
 1. Non–Delegation Doctrine ....................................... 1536
 2. Proportionality Review ......................................... 1537
 3. Ex Post Facto Clause .......................................... 1537
 4. Eighth Amendment ........................................... 1538
 V. Constitutionality and Propriety of Specially Alleged Non–Statutory Aggrava-
 ting Factors ..................................................... 1538
 A. The "Mental State" Factor ...................................... 1538
 1. Defendant's Pre–McCullah Contentions .......................... 1538
 2. Defendant's Post–McCullah Contentions (Doc. 106) ............... 1539
 B. "Lack of Remorse" Factor ...................................... 1541
 C. "Continuing Danger" Factor .................................... 1542
 D. "Victim Impact Evidence" Factor ................................ 1542
 E. "Low Potential for Rehabilitation" Factor .......................... 1543
 VI. Arbitrary Selection for Death Penalty Prosecution ......................... 1544
 VII. Fifth Amendment Indictment Clause ..................................... 1545
 VIII. Specificity of Notice of Intent to Seek the Death Penalty ..................... 1545
 IX. Evidentiary Standard for the Sentencing Hearing ......................... 1546
 X. Mitigating Evidence ................................................. 1547
 XI. Cruel and Unusual Punishment ........................................ 1547
 XII. Meaningful Appellate Review .......................................... 1548
DISCOVERY AND RELATED MOTIONS ....................................... 1548
 I. Interviews of Those Persons That the Government Will Not Call as Witnesses.. 1549
 II. Discovery and Bill of Particulars Regarding the Government's Evidence in
 Support of the Aggravating Factors .................................... 1549
 III. Discovery of Evidence in Mitigation ..................................... 1552
 IV. Discovery Regarding Government's Initial Recommendation to Seek the
 Death Penalty ..................................................... 1552

---

## BACKGROUND

Nguyen is charged by indictment with a violation of the Hobbs Act, 18 U.S.C. § 1951 (Doc. 78, Count 1). Nguyen is also charged with using a firearm in the commission of specified crimes, including the Hobbs Act, pursuant to 18 U.S.C. § 924(c) (Doc. 78, Count 2). These charges arise from a robbery of the Mandarin Restaurant and Club in Wichita, Kansas on November 8, 1994, during which one of the co-owners, Barbara Sun, was killed. The government is seeking the death penalty pursuant to 18 U.S.C. § 924(i)(1), which prohibits murder during the course of a violation of 18 U.S.C. § 924(c).

The court will first discuss the substantive motions attacking the constitutionality of the death penalty statute, then Nguyen's discovery requests.

## DISCUSSION

### Substantive Death Penalty Challenges

Nguyen moves to strike the death penalty notice, claiming the death penalty statute is facially unconstitutional and unconstitutional as applied to his case (Docs. 64, 65). The government has responded to the motion

(Doc. 97). The court will provide a general overview of the death penalty statute, then address each of Nguyen's substantive arguments in turn.

## I. Overview of the Death Penalty Statute, 18 U.S.C. § 3591, Et Seq.

If Nguyen is convicted of the offenses charged in the indictment, there are several steps that the jury must pass through before it can impose the death penalty. First, the jury must determine whether Nguyen had the requisite intent to commit the death-eligible offense. 18 U.S.C. § 3591(a). If the jury unanimously finds beyond a reasonable doubt that intent is established, it moves to the next step in the penalty process. If the jury does not so find, the deliberations are over and the death penalty may not be imposed.

Assuming the jury finds the requisite intent, it must then consider the statutory aggravating factors alleged by the government in its notice to seek the death penalty. The statutory aggravating factors from which the government may choose are listed at 18 U.S.C. § 3592(c)(1)-(15). The jury must determine whether the government has proven at least one of the statutory factors alleged beyond a reasonable doubt. 18 U.S.C. § 3593(c). If the jury unanimously so finds, it moves to the next step of the penalty process. If not, the deliberations are over and the death penalty may not be imposed. 18 U.S.C. § 3593(d).

Assuming the jury finds at least one statutory aggravating factor, it must then consider that factor or factors, plus "any other aggravating factor for which notice has been provided," 18 U.S.C. § 3593(d) ("non-statutory aggravating factors"), and weigh them against any mitigating factors to determine whether the death penalty is appropriate. 18 U.S.C. § 3593(e).

Non-statutory aggravating factors, like their statutory counterparts, must be unanimously found by the jury beyond a reasonable doubt, while mitigating factors need only be established by a preponderance of the evidence. Further, any juror persuaded that a mitigating factor exists may consider it in reaching a sentencing decision; unanimity is not required. 18 U.S.C. § 3593(c), (d).

## II. Constitutionality of the Statutory Definition of the Capital Offense

■ Nguyen notes that he has been charged with the death-eligible offense of 18 U.S.C. § 924(i)(1), which prohibits murders caused by a firearm during the course of a violation of 18 U.S.C. § 924(c). The § 924(c) charge stems from the robbery of the Mandarin Restaurant.[2] Nguyen argues that the *sine qua non* of death penalty eligibility under the section is the fact that a firearm was used to kill Barbara Sun; a murder by any other means would not be death-eligible (Doc. 65 at 22). Thus, Nguyen contends that use of a firearm qualifies as a "built-in aggravating circumstance" (*Id.* at 22–23) and, as such, it must (1) "genuinely narrow" the class of individuals eligible for the death penalty and (2) "justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." (*Id.* at 23) (quoting *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983)). Nguyen contends that the firearm element fails the second *Zant* requirement because it fails to "reasonably justify" differing treatment between firearm and non-firearm murders. He argues that there is nothing about the nature of firearms or the way that they inflict death that justifies singling out firearm murders for the death penalty, *i.e.,* to the exclusion of more brutal forms of non-firearm inflicted murder. He cites no authority in support of his argument (*Id.* at 23–24).

---

**2.** Section 924(i)(1) provides in relevant part: "A person who in the course of a violation of [924](c), causes the death of a person through the use of a firearm, shall ... if the killing is a murder (as defined in section 1111), be punished by death...." 18 U.S.C. § 924(i)(1).

Section 924(c) provides in relevant part: "Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall ... be sentenced...." 18 U.S.C. § 924(c)(1).

The "crime of violence" charged is the robbery of a business affecting interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951.

The government responds that use of a firearm is not a statutory aggravating factor. Rather, the statutory aggravating factors are codified at 18 U.S.C. § 3592(c). The government notes that before the death penalty may be imposed, a jury must convict under § 924(i)(1), and in addition, must find the presence of at least one of the listed statutory aggravating factors (Doc. 97 at 2–3).

■ An "aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)," *Tuilaepa v. California*, — U.S. —, —, 114 S.Ct. 2630, 2635, 129 L.Ed.2d 750 (1994). There is nothing in the statute itself indicating that Congress intended use of a firearm to be an aggravating factor in § 924(i)(1). Rather, the statute simply states one death-eligible form of murder.

■ Even if the court were to accept Nguyen's argument (which it does not) that the use of a firearm constitutes a "built-in aggravating factor," this does not appear to run afoul of the Constitution. The purpose of aggravating factors—to narrow the class of death-eligible persons—may be accomplished at the guilt, as well as the sentencing, phase of trial. *Lowenfield v. Phelps*, 484 U.S. 231, 244–45, 108 S.Ct. 546, 554–55, 98 L.Ed.2d 568 (1988). Even if Congress' purpose was to narrow death-eligible murders to those committed with firearms, the court perceives no reason why this purpose is constitutionally infirm, nor has Nguyen cited any authority suggesting that it would be.

Accordingly, the court finds that the statutory definition of the capital offense, 18 U.S.C. § 924(i)(1), is constitutional, and Nguyen's motion to strike the death penalty notice on this ground is denied.

## III. Constitutionality of Particular Statutory Aggravating Factors

Nguyen argues that the statutory aggravating factors alleged against him are facially unconstitutional, and unconstitutional as applied to his case. The government has alleged two statutory aggravating factors against Nguyen: (1) that he committed the offense in an especially heinous, cruel or depraved manner in that it included torture or serious physical abuse to the victim, Barbara Sun, 18 U.S.C. § 3592(c)(6); and (2) that he committed the offense in expectation of the receipt of something of pecuniary value, 18 U.S.C. § 3592(c)(8) (Doc. 27 at 2).

### A. The "Especially Heinous, Cruel, or Depraved Manner" Aggravating Factor

#### 1. Facial Unconstitutionality

■ Nguyen first argues that the "especially heinous, cruel or depraved" aggravating factor, 18 U.S.C. § 3592(c)(6), is facially unconstitutional because it is so broad as to encompass every first degree murder (Doc. 65 at 25–26). Nguyen notes the checkered constitutional past of similar aggravators, and argues that the language of the aggravator is unconstitutionally vague unless an appellate court has narrowed its meaning (*Id.* at 26) (citing *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990)).

The words "especially heinous, cruel or depraved," standing alone, have been held to be facially vague, *see Walton v. Arizona*, 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990) (acknowledging facial vagueness of such terms). However, the statutory aggravating factor at issue here is modified by further language:

> **(6) Heinous, cruel, or depraved manner of committing offense.**—The defendant committed the offense in an especially heinous, cruel, or depraved manner *in that it involved torture or serious physical abuse to the victim.*

18 U.S.C. § 3592(c)(6) (emphasis added).

The court finds that the emphasized language furnishes the requisite "principled guidance" for the choice between death and a lesser penalty. *Richmond v. Lewis*, 506 U.S. 40, 45–47, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992). This particular modifying language has been found by the Supreme Court to be constitutionally sufficient to withstand a vagueness challenge. *Maynard*, 486 U.S. at

364–65, 108 S.Ct. at 1859; *see also Walton,* 497 U.S. at 653–55, 110 S.Ct. at 3057–58.

■ While this disposes of the vagueness determination, *Tuilaepa* also mandates that an aggravating factor "may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa,* —— U.S. at ——, 114 S.Ct. at 2635 (citation omitted). The aggravating factor at issue fulfills this narrowing requirement. The court rejects Nguyen's contention that "an ordinary person could honestly believe that every intentional taking of human life is especially heinous, cruel or depraved in that it involved torture or serious physical abuse to the victim." (Doc. 65 at 28–29). Clearly, that contention is not true in fact and is an unwarranted extension of the Supreme Court's statement in *Godfrey, supra,* 446 U.S. at 428–29, 100 S.Ct. at 1765 ("A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible or inhuman.' ")

Other federal district courts considering similar challenges to the identically worded aggravating factor in continuing criminal enterprise ("CCE") cases, 21 U.S.C. § 848(n)(12), have unanimously upheld its constitutionality. *See United States v. Bradley,* 880 F.Supp. 271, 289 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 546, 558 (E.D.N.Y.1992), *aff'd,* 986 F.2d 499 (2nd Cir. 1992), *aff'd,* 5 F.3d 624 (2nd. Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994); *United States v. Pretlow,* 779 F.Supp. 758, 773 (D.N.J.1991); *United States v. Cooper,* 754 F.Supp. 617, 623 (N.D.Ill.1990), *aff'd,* 19 F.3d 1154 (7th Cir. 1994).

The court finds that 18 U.S.C. § 3592(c)(6) is facially constitutional.

### 2. *Particularized Unconstitutionality*

Nguyen also attacks the constitutionality of the factor as applied to his case. He contends that evidence that Barbara Sun was assaulted and battered before being shot and/or evidence that another person, Bountaem Chanthadara, actually fired the shots, would be constitutionally insufficient to support the aggravating factor (Doc. 65 at 29–32). Nguyen's argument is premature. At this stage of the proceeding, the court cannot foresee what evidence the government will produce at trial. If convicted, Nguyen will be free to argue that the government's evidence does not sufficiently prove this or any other aggravating factor. At this time, however, Nguyen's motion to strike 18 U.S.C. § 3592(c)(6) is denied.

### B. *The "Pecuniary Gain" Aggravating Factor*

■ Nguyen argues that the "pecuniary gain" aggravating factor, 18 U.S.C. § 3592(c)(8), should be stricken because it cannot be "constitutionally" applied to the facts of his case (Doc. 65 at 32). Significantly, however, he does not cite any provision of the Constitution or make any argument supporting his claim of constitutional infirmity. Nguyen also contends that the aggravator is inherently ambiguous, and thus the "rule of lenity" requires the court to read the factor narrowly to encompass only "murder-for-hire" or murder for purposes of gaining an inheritance or insurance proceeds (*Id.* at 34–35).

The pecuniary gain aggravating factor at issue provides:

(8) **Pecuniary gain.**—The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

18 U.S.C. § 3592(c)(8).

■ The "rule of lenity" is a rule of statutory construction which only applies if a statute is facially ambiguous and the legislative history does not reveal the intent of the language.

This rule, however, is not to be invoked lightly. It is not applicable unless "there is a 'grievous ambiguity or uncertainty in the language and structure of the Act.' " *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (quoting *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974)). In particular, a statutory scheme will not be deemed ambiguous only because the defendant has

proffered a possible construction which is more narrow than what the government advocates. *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990). The rule's application is limited to cases where, after reviewing all available relevant materials, the court is still left with an ambiguous statute. *See Smith v. United States,* 508 U.S. 223, 238–39, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993).

*United States v. Wilson,* 10 F.3d 734, 736 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1621, 128 L.Ed.2d 347 (1994).

The court finds nothing ambiguous about the language of 18 U.S.C. § 3592(c)(8), much less any "grievous ambiguity or uncertainty." Just because similar aggravators have met with various narrowing constructions in some state court decisions[3] does not convince this court that it should narrowly construe 18 U.S.C. § 3592(c)(8) contrary to its plain language.

In *United States v. Walker,* 910 F.Supp. 837 (N.D.N.Y.1995), the court addressed this same argument regarding the identically worded aggravating factor in CCE cases, 21 U.S.C. § 848(n)(7). Like Nguyen, the defendants in *Walker* argued that 21 U.S.C. § 848(n)(7) was intended to apply only to murder-for-hire or murder to gain an inheritance or life insurance proceeds, and not to murder during the course of a robbery. *Walker,* 910 F.Supp. at 848. The *Walker* court rejected the argument:

The Court first notes that § 848(n)(7) has two prongs: that the offense was committed "as consideration for the receipt" *or* "in expectation of the receipt" of something of pecuniary value. Defendants' view seems correct that the first prong's use of the "as consideration for" language of contract contemplates murder-for-hire.[4] For this Court to transport that restriction to the second, "in expectation of the receipt," prong, however, would render the second clause mere surplusage.[5]

*Walker,* 910 F.Supp. at 848 (emphasis and footnotes in original).

Nguyen also argues that the use of the word "expectation" in the second prong of § 3592(c)(8) is meant to evoke the Dickensian meaning of "inheritance" as used in the novel *Great Expectations.* The *Walker* court rejected this same argument regarding § 848(n)(7):

Nor can the Court reasonably restrict the term "expectation" to its Dickensian aspect of inheritance. Webster's defines "expectation" as "1. the act of expecting or state of being expected. 2. Eager anticipation."[6] Webster's II New Riverside Dictionary 455 (1994). "Expect" is defined therein as "1. to look forward to the probable occurrence of appearance of; 2. to consider likely or certain." *Id.* In short, nothing in the plain meaning of "expectation" serves to limit an understanding of Congress' use of the term to murders in expectation of the receipt[7] of an inheri-

---

**3.** The state court decisions Nguyen cites appear to be in the minority. *See* Thomas M. Fleming, Annotation, *Sufficiency of Evidence, for Purposes of Death Penalty, to Establish Statutory Aggravating Circumstances that Murder Was Committed for Pecuniary Gain, as Consideration of in Expectation of Receiving Something of Monetary Value, and the Like—Post–Gregg Cases,* 66 A.L.R. 4th 417, §§ 3[a], [b], 5 (1988).

**4.** [n. 12 in original] *Compare* 18 U.S.C. § 1958 (the federal "murder-for-hire statute") which speaks of "intent that a murder be committed ... as *consideration* for the receipt of ... anything of pecuniary value." 18 U.S.C. § 1958(a) (emphasis added).

**5.** [n. 13 in original] *Compare* 18 U.S.C. § 1958, which expressly transports the language of contract to *both* its prongs as follows: "with intent that a murder be committed ... as *consideration*

for a promise or agreement to pay, anything of pecuniary value." 18 U.S.C. § 1958(a) (emphasis added). There is no dispute that § 1958 speaks only to murder-for-hire: had Congress intended defendants' narrow construction it could have indicated so by similar transportation here.

**6.** [n. 14 in original] "Future prospects <great *expectations*>," *id.,* runs a distant third.

**7.** [n. 15 in original] Nor does the term "receipt" serve to limit interpretation of the statute to pecuniary benefit which accrues to a defendant in a transactional sense, which seems to be the gist of defendants' argument. "Receipt" in its plain and ordinary meaning is defined as "1a. An act of receiving something; b. The fact of being received." Webster's II New Riverside Dictionary 981 (1994) "Receive" is defined as "1.

tance. Defendants themselves recognize this by admitting to the language's sweep, murder in expectation of insurance proceeds. They offer no principled reason why the second prong stops there and reaches no further, however, and the Court sees no textual basis upon which to conclude that the second clause admits these fact patterns but excludes all others.

*Id.* at 848–49 (footnotes in original). This court agrees with the reasoning of *Walker,* and adopts that analysis here.

Accordingly, Nguyen's motion to strike the pecuniary gain aggravating factor is denied.[8]

## IV. Constitutionality of Non–Statutory Aggravating Factors

The government has notified Nguyen that it intends to prove five non-statutory factors at the sentencing phase (Doc. 27 at 3). Nguyen advances several arguments attacking the constitutionality of non-statutory aggravating factors in general. The court will address each of them in the order presented.

### A. Statutory Authority for Non–Statutory Aggravating Factors

Nguyen contends that the use of non-statutory aggravating factors is not authorized by the death penalty statute, because the language authorizing the factors in 18 U.S.C. § 3592(c) contradicts language in § 3591(a) (Doc. 65 at 38–39). Section 3592(c) provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). Section 3591(a) provides that a defendant "shall be sentenced to death, if, after consideration of the factors *set forth* in section 3592 . . ., it is determined that imposition of a sentence is justified." 18 U.S.C. § 3591(a) (emphasis added). Nguyen claims that § 3591(a) allows consideration of only those factors "set forth" in § 3592, and because non-statutory factors are not "set forth" in § 3592, they may not be considered.

The court sees no merit in this argument. A statute should be construed, if possible, in such a way that all of its provisions can be given effect, and so that no part of the statute is rendered inoperative or superfluous. *Homeland Stores, Inc. v. Resolution Trust Corp.,* 17 F.3d 1269, 1273 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994). Nguyen's strained and hyper-literal reading of § 3591(a) would render large portions of § 3592 inoperative. For example, if the court accepted Nguyen's construction of § 3591(a), then this would also render inoperative the "any other" *mitigating* factors provision, § 3592(a)(8), a result that Nguyen would surely claim violates the Fifth and Eighth Amendments. There is nothing internally contradictory or ambiguous about a statute referring to something "set forth" in a "catch-all provision." It is a frequently employed tool of the law.

Accordingly, Nguyen's motion to strike the non-statutory aggravating factors as contradictory is denied.

### B. Non–Delegation Doctrine, Proportionality Review and Ex Post Facto Challenges to Government's Identification of Non–Statutory Aggravating Factors

#### 1. Non–Delegation Doctrine

Nguyen argues that allowing the government to effectively define the non-statutory factors amounts to an unconstitutional delegation of legislative power to the executive branch (Doc. 65 at 40).

After Nguyen filed his brief, the Tenth Circuit rejected this argument in *United States v. McCullah,* 76 F.3d 1087 (10th Cir. 1996). The defendant in *McCullah* challenged the identically worded provision in 21 U.S.C. § 848 allowing the government to charge non-statutory aggravating factors in connection with a CCE. *McCullah,* 76 F.3d at 1106. Relying on *Mistretta v. United*

---

To acquire or *take* (something given, offered or transmitted): GET." *Id.*

**8.** Although Nguyen did not cite the case, the court acknowledges that in *United States v. Davis,* 904 F.Supp. 554, 558 (E.D.La.1995), the court, responding to a vagueness challenge

against 18 U.S.C. § 3592(c)(8), stated: "The Court finds nothing vague or overly broad about a murder-for-hire which is in essence what § 3592(c)(8) describes." This dicta does not affect this court's analysis.

*States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Tenth Circuit held that the prosecutorial discretion to promulgate non-statutory aggravating factors falls squarely within the constitutionally permissible range of delegation of power to the Executive Branch. *McCullah,* 76 F.3d at 1106–07.

The court finds that any further examination of this issue is foreclosed by *McCullah,* and accordingly, Nguyen's motion to strike the non-statutory aggravating factors for violating the non-delegation doctrine is denied.

### 2. Proportionality Review

██ Nguyen next argues that use of non-statutory aggravating factors without accompanying "proportionality review" is unconstitutional (Doc. 65 at 43).[9] Nguyen acknowledges that in *Pulley v. Harris,* 465 U.S. at 44, 104 S.Ct. at 876, the Supreme Court held that the Eighth Amendment does not require proportionality review (Doc. 65 at 44). He attempts to distinguish *Pulley,* however, on the basis that it did not address a capital punishment system allowing consideration of non-statutory aggravating factors (Doc. 65 at 47). Rather, he emphasizes *Zant,* which reviewed a Georgia capital scheme allowing non-statutory aggravating factors. He argues that *Zant* stands "for the proposition that in a system—such as Georgia's and the federal death-penalty scheme—which permits a jury to consider non-statutory aggravating factors, proportionality review is a necessary check on arbitrary imposition of a death verdict" (Doc. 65 at 48).

As the government points out, however, a similar argument was rejected by *Pulley* itself (Doc. 97 at 13). Discussing the defendant's reliance on *Zant,* the *Pulley* Court stated:

> While emphasizing the importance of mandatory appellate review under the Georgia statute, [*Zant* ], [462 U.S.] at 875 and 876, 103 S.Ct., at 2741–2742, we did not hold that without comparative proportionality review the statute would be unconstitution-

al. To the contrary, we relied on the jury's finding of aggravating circumstances, not the State Supreme Court's finding of proportionality, as rationalizing the sentence. Thus, the emphasis was on the constitutionally necessary narrowing function of statutory aggravating circumstances. Proportionality review was considered to be an additional safeguard against arbitrarily imposed death sentences, but we certainly did not hold that comparative review was constitutionally required.

*Pulley,* 465 U.S. at 50, 104 S.Ct. at 879 (footnote omitted).

Moreover, the federal district courts addressing 21 U.S.C. § 848, also a weighing statute allowing consideration of non-statutory factors, have unanimously held that there is no requirement of proportionality review. *See Walker,* 910 F.Supp at 851–52; *Bradley,* 880 F.Supp. at 284; *Pitera,* 795 F.Supp. at 559–60; *Pretlow,* 779 F.Supp. at 768–69; *Cooper,* 754 F.Supp. at 626.

Accordingly, Nguyen's motion to strike the non-statutory aggravating factors based on a lack of proportionality review is denied.

### 3. Ex Post Facto Clause

██ Nguyen next argues that allowing the government to define the non-statutory factors after the crime violates the *Ex Post Facto* Clause (Doc. 65 at 49). Article I, § 10, of the U.S. Constitution forbids the passage of any *ex post facto* law. As the government notes (Doc. 97 at 13–14), however, the *Ex Post Facto* Clause is only implicated by "laws that 'retroactively alter the *definition* of crimes or *increase the punishment* for criminal acts.' " *California Dept. of Corrections v. Morales,* —— U.S. ——, ——, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (emphasis added) (quoting *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)); *accord United States v. Cabrera–Sosa,* 81 F.3d 998, 1001 (10th

---

9. Nguyen adopts the definition of "proportionality review" found in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), which, rather than inquiring whether the penalty is proportional to the crime, "purports to inquire ... whether the penalty is ... unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime." *Id.* at 43, 104 S.Ct. at 876.

**1538**

Cir.1996); *Hatch v. Oklahoma*, 58 F.3d 1447, 1463–64 (10th Cir.1995).

More specifically, the Supreme Court has held that procedural changes in a capital sentencing scheme which alter the method of determining whether the death penalty is to be imposed do not implicate *ex post facto* concerns. *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977); *accord Hatch*, 58 F.3d at 1464. Here, the crime and available punishments are defined at 18 U.S.C. §§ 1951, 924(c)(1), and (i)(1), all of which were in effect at the time of the robbery/homicide at issue here. The fact that the government alleged non-statutory aggravating factors does not change the definition of the crimes, nor the quantum of punishment available. *See Walton v. Arizona*, 497 U.S. at 648, 110 S.Ct at 3054 (noting that aggravating factors do not constitute separate penalties or offenses).

Accordingly, the court finds that the use of non-statutory aggravating factors does not violate the *Ex Post Facto* Clause. *Accord United States v. DesAnges*, 921 F.Supp. 349, 354–55 (W.D.Va.1996); *Bradley*, 880 F.Supp. at 284; *Pitera*, 795 F.Supp. at 563–64.

*4. Eighth Amendment*

██ Finally, Nguyen argues generally that allowing the government to define non-statutory aggravating circumstances violates the Eighth Amendment because it will result in arbitrary and capricious sentencing (Doc. 65 at 50). In light of the previous discussion, the court disagrees. *See also Zant*, 462 U.S. at 878, 103 S.Ct at 2743 ("[T]he Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among [the class of persons eligible for the death penalty], those defendants who will actually be sentenced to death.") (footnote omitted).

Nguyen's motion to strike the non-statutory aggravating factors as unconstitutional is denied.

**V. Constitutionality and Propriety of Specially Alleged Non–Statutory Aggravating Factors**

The government has notified Nguyen that it intends prove the following non-statutory factors at the sentencing phase: (1) that Nguyen participated in an act of violence which evinced reckless disregard for human life, and that Barbara Sun died as a result of the act; (2) that Nguyen has a lack of remorse; (3) that Nguyen represents a continuing danger to the lives and safety of others in the future; (4) that Nguyen caused permanent harm to the family of Barbara Sun by her murder which was committed in close proximity to her husband and two daughters; and (5) that Nguyen has a low potential for rehabilitation (Doc. 27 at 3). Nguyen challenges the constitutionality and factual propriety of these factors. The court will address the factors in the order alleged in the government's notice.

*A. The "Mental State" Factor*

*1. Defendant's Pre–McCullah Contentions*

██ The first factor alleged by the government in its notice is that

[t]he defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a result of the act[.]

(Doc. 27 at 3).

Nguyen argues that the government cannot reallege as a separate aggravating factor the mental state necessary for imposition of the death penalty (Doc. 65 at 54).[10] He also

10. 18 U.S.C. § 3591 requires the government to prove as an initial matter one of the four mental states listed at subsections (a)(2)(A)–(D) before the jury may consider any aggravating or mitigating evidence. The aggravating factor at issue mirrors § 3591(a)(2)(D), the "minimum" mental state required for constitutional imposition of the death penalty. *See Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140 (1982) (state may not execute a defendant who did not "himself kill, attempt to kill or intend that a killing take place or that lethal force will be employed.") *Compare Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) (Major participation in the felony committed, combined with reckless indifference to human life, is sufficient to establish the culpable mental state requirement of *Enmund*).

argues that the government should not be allowed to allege this factor because it does not serve a narrowing function, is improperly duplicative, and instead constitutes a mitigating factor (Doc. 65 at 55–57).

Nguyen's arguments ignore *Lowenfield, supra.* In *Lowenfield,* the Supreme Court reviewed a Louisiana capital case in which the sole aggravating factor found by the jury—"the offender knowingly created a risk of death or great bodily harm to more than one person"—was also an element of the substantive capital offense. *Id.* at 243, 108 S.Ct. at 554. The Court noted that the requisite narrowing could be performed at either the guilt or penalty phase of trial. *Id.* at 244–45, 108 S.Ct. at 554. Upholding the death sentence, the Court stated:

> The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is not part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.

*Id.* at 246, 108 S.Ct. at 555.

Here, the federal statute initially narrows the class of defendants eligible for the death penalty to certain fact situations. *See* 18 U.S.C. §§ 1951, 924(c), (i)(1). The statute then further narrows the class of death-eligible defendants through the use of the "gateway" mental state factors listed at 18 U.S.C. § 3591(a)(2)(A)–(D). Thus, the federal capital scheme easily passes muster under *Lowenfield.* Further narrowing, whether by aggravating factors or otherwise, is constitutionally unnecessary. *See McCullah,* 76 F.3d at 1108, 1109; *accord United States v. Chandler,* 996 F.2d 1073, 1092–93 (11th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994).

Thus, Nguyen's claim that alleging the mental state as a non-statutory aggravating factor is impermissibly duplicative of an element of the crime is disposed of by *Lowenfield* and *McCullah. See McCullah,* 76 F.3d at 1108 (following *Lowenfield* to approve government's use of "committed the offenses

charged in the indictment" as a non-statutory aggravating factor, even though it simply restated the elements of the offenses).

■ Nguyen also argues that the government should not be able to use the minimal mental state as an aggravating factor, because it should be given mitigating weight (Doc. 65 at 57). As the government notes, however, most evidence is subject to a dual interpretation, and it should not be foreclosed from presenting the evidence as aggravating simply because Nguyen intends to argue that it is mitigating (Doc. 97 at 17). *See Tuilaepa,* — U.S. at — – —, 114 S.Ct. at 2638–39 (rejecting argument that sentencer must be instructed how to weigh a particular fact in the sentencing decision).

### 2. Defendant's Post–McCullah Contentions (Doc. 106) [11]

In his supplemental post-*McCullah* brief, Nguyen raises two more subtle duplication arguments requiring further discussion. Nguyen argues that because the § 3591(a)(2)(C) and (D) mental states are *not* aggravating factors under the statute, but rather are set apart as "gateway" eligibility findings, the government should be limited to using them as such, and should not be allowed to use them as independent aggravating factors. He argues that *McCullah,* which touched upon some of the differences between 21 U.S.C. § 848 and 18 U.S.C. § 3591, supports his argument by implication (Doc. 106 at 4–6).

*McCullah* rejected the defendant's argument that the § 848(n)(1) mental state factors are mere eligibility factors which cannot be weighed as aggravating factors. Looking to the plain language of the statute, the court noted that § 848(n)(1) is listed along with eleven other factors, § 848(n)(2)–(12), under the subsection heading of "Aggravating factors for homicide." *McCullah,* 76 F.3d at 1109. It also noted that § 848(k) clearly contemplates weighing the (n)(1) factors along with the (n)(2)–(12) aggravating factors. *Id.*

---

**11.** The government has not responded to Doc. 106.

Nguyen nevertheless argues that *McCullah* implies that a different result would be required if § 3591 was at issue:

> Because Congress, as with the section 848 scheme, could have, but did not, denominate the mental states outlined in section 3591(a)(2) as aggravating circumstances, but instead explicitly limited these considerations to threshold or gateway findings, the government cannot do an end run around the intent of Congress by alleging mental states as *both* a threshold requirement for death-eligibility in the first instance *and* as a non-statutory aggravating circumstance.

(Doc. 106 at 5–6) (emphasis in original).

The court cannot read *McCullah* as broadly as Nguyen would like. While the court agrees that the § 3591(a)(2) mental states act as threshold or "gateway" findings, there is nothing in the plain language of the statute limiting them exclusively to that role. Section 3593(d) allows for consideration of "*any* other aggravating factor for which notice has been provided." 18 U.S.C. § 3593(d) (emphasis added). Nor does the court glean anything from the *McCullah* opinion implying that this use is improper.

Nguyen also argues that *McCullah* "makes it clear that the government cannot allege the mental state twice—as both a threshold finding and a non-statutory aggravating circumstance—without creating an unconstitutional duplication which improperly skews the weighing process in favor of death" (Doc. 106 at 6). The court disagrees. *McCullah* did hold that under a "weighing" statute, such as § 848 and the one at issue here, the government may not allege duplicative *aggravating* factors. *McCullah*, 76 F.3d at 1111–12. While holding that the government's allegation of (n)(1)(C) and (n)(1)(D) mental states was improperly duplicative, that holding was clearly grounded on the fact that those mental states functioned as aggravating factors under § 848(n), and as such,

were to be weighed by the jury under § 848(k):

> While the federal statute at issue is a weighing statute which allows the jury to accord as much or as little weight to any particular aggravating factor, the mere finding of an aggravating factor cannot but imply a qualitative value to that factor. *Cf. Engberg v. Meyer*, 820 P.2d 70, 89 (Wyo. 1991). When the sentencing body is asked to weigh a factor twice in its decision, a reviewing court cannot "assume it would have made no difference if the thumb had been removed from death's side of the scale." *Stringer [v. Black]*, 503 U.S. [222,] 232, 112 S.Ct. [1130,] 1137, [117 L.Ed.2d 367 (1992)]. In *Stringer* the Supreme Court made it clear that:

> When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.

*Id.* We hold that the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors.

*Id.* at 1112.

Thus, *McCullah* is not implicated here. As Nguyen concedes, "the four mental states outlined in section 3591(a)(2) are *not* aggravating factors, as they are in section 848 prosecutions" (Doc. 106 at 5). As threshold findings, the jury must find the existence of one of the mental states before it can move to the weighing process. If the jury so finds, it may then consider the mental state as an aggravating factor within the weighing calculus. The court finds that *McCullah* does not preclude the use of Nguyen's mental state as an aggravating factor.[12]

 Finally, Nguyen argues that the government must elect between the two

---

12. Moreover, if the court were to read *McCullah* as Nguyen requests, it would appear to render the opinion internally inconsistent. *See McCullah*, 76 F.3d at 1107–08, 1109–10 ("While the factors in § 848(n)(1) may mirror the intent element found at the guilt phase, this is permissible under *Lowenfield*.").

Similarly, the mental state aggravating factor here is permissible even though it mirrors the intent element that must be found at the threshold of the penalty phase.

threshold mental states alleged, § 3591(a)(2)(C) and (D), because they are duplicative under *McCullah* (Doc. 106 at 2). As discussed, *McCullah* is concerned with duplicative aggravating factors used in the weighing process. That concern is not implicated by the government's allegation of alternative overlapping threshold mental states. In any event, the argument is premature, because the government has not presented any of its evidence in this regard.

Accordingly, Nguyen's motion to strike the "mental state" non-statutory aggravating factor and to order the government to elect between the threshold mental states alleged is denied.[13]

### B. "Lack of Remorse" Factor

 The second non-statutory aggravating factor alleged by the government is that "[t]he defendant has a lack of remorse for his participation in these offenses" (Doc. 27 at 3). Nguyen argues that this aggravator improperly infringes on a defendant's Fifth Amendment right to remain silent and not to testify (Doc. 65 at 58). The government responds that it intends to show the defendant's lack of remorse through his actions, statements and demeanor (Doc. 97 at 19).

In his supplemental brief (Doc. 106 at 7), Nguyen draws the court's attention to *United States v. Davis*, 912 F.Supp. 938 (E.D.La. 1996), which recently struck a similar factor in a § 3591 prosecution. The *Davis* court stated:

> Lack of remorse is a subjective state of mind, difficult to gage objectively since behavior and words don't necessarily correlate with internal feelings. In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt. To allow the government to highlight an offender's "lack of remorse" undermines those safeguards. Without pass-

ing on whether lack of remorse is *per se* an inappropriate independent factor to consider, the court finds it inappropriate in this case. The only information proposed to sustain the factor is DAVIS' alleged jubilation in learning that [the victim] had been killed. The government does not propose to introduce evidence of continuing glee, or boastfulness, or other affirmative words or conduct that would indicate a pervading and continuing lack of remorse. Furthermore, as already noted, the allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the government to its proof.

*Id.* at 946. While the court did not allow "lack of remorse" to be alleged as a separate aggravating factor, it stated that it would allow the government to present evidence of the defendant's alleged exultation as probative of "future dangerousness." *Id.*

While this court acknowledges the concerns expressed by the *Davis* court and agrees with defendant's contention that silence cannot be an aggravating factor, it does not believe that the same result is required here. The *Davis* court had before it a detailed notice of intent to seek the death penalty setting forth the evidence that the government intended to introduce in support of each aggravating factor. *Davis*, 912 F.Supp. at 950–53 (death notice appended to opinion). In this case, the death notice contains none of the evidence in support. The court is not comfortable with striking one of the government's aggravating factors without first knowing what evidence the government intends to introduce.

There does not appear to be any constitutional problem with a "lack of remorse" factor *per se*. *See Zant*, 462 U.S. at 885 n. 22, 103 S.Ct. at 2747 n. 22 ("Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation") (quoting *Fair v. State*, 245 Ga. 868, 268

---

**13.** The government did not respond to defendant's "election" argument in its response (Doc. 97), perhaps because defendant indicated that he would file an election motion at "an appropriate time" (Doc. 65 at n. 17).

**The government is directed to file a response to this issue on or before May 24, 1996.**

S.E.2d 316, 321, *cert. denied,* 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980)). Nor does the factor appear to duplicate any other aggravating factor alleged. *See McCullah,* 76 F.3d at 1111–12. For example, a defendant could have a lack of remorse without representing a continuing threat to others, and vice versa.

■ The court cautions the government, however, that any evidence it intends to submit in support of this factor must be more than mere silence. It also must be relevant, reliable and its probative value must outweigh any danger of unfair prejudice. 18 U.S.C. § 3593(c); *cf. Walker,* 910 F.Supp. at 855 (dismissing lack of remorse factor because evidence in support was more prejudicial than probative). The evidence must adequately establish the existence of the factor alleged, and it may not implicate Nguyen's constitutional right to remain silent. With these limitations in mind, the court denies Nguyen's motion to strike the "lack of remorse" factor.

### C. "Continuing Danger" Factor

■ The third non-statutory aggravating factor alleged by the government is that "[t]he defendant represents a continuing danger to the lives and safety of others in the future" (Doc. 27 at 3). Nguyen contends that this factor is improper because it is speculative, vague and unconstitutional as applied to his case (Doc. 65 at 60).

Similar factors have been approved by the Supreme Court in the face of challenges that they are too vague and speculative. *Jurek v. Texas,* 428 U.S. 262, 274–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976) ("It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future crimi-

nal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.") *See also Tuilaepa,* — U.S. at —, —, 114 S.Ct. at 2636, 2637 (citing *Jurek* and continuing threat factor with approval); *California v. Ramos,* 463 U.S. 992, 1002–03, 103 S.Ct. 3446, 3454, 77 L.Ed.2d 1171 (1983) (discussing *Jurek*); *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).[14] It is clearly proper to allege such a factor. *Accord Davis,* 912 F.Supp. at 945; *Bradley,* 880 F.Supp. at 287.

In support of his argument, however, Nguyen cites *Williamson v. Reynolds,* 904 F.Supp. 1529 (E.D.Okla.1995), a federal habeas case reversing a death sentence imposed by an Oklahoma state court. The *Williamson* court held that Oklahoma's "continuing threat" aggravator was vague because the Oklahoma courts did not guide the jury's discretion with any instructions, and perhaps because the state appellate court had failed to give a consistent limiting construction to the factor. *Id.* at 1570–71. Here, the court will fashion proper limiting instructions on the aggravating factor alleged, and the parties will have the opportunity to submit proposed instructions.

Nguyen also argues that the factor is unconstitutional as applied to his case (Doc. 65 at 63). Like Nguyen's other "as applied" challenges, this one is premature, because the court is unaware of what evidence the government intends to put on.

Accordingly, Nguyen's motion to strike the "continuing danger" aggravator is denied.

### D. "Victim Impact Evidence" Factor

■ The fourth non-statutory aggravating factor alleged by the government is that "[t]he defendant caused permanent harm to the family of Barbara Sun by her murder

---

14. *Simmons* was decided in the context of the trial court's failure to give an instruction that if sentenced to life imprisonment, the defendant would never be released on parole. The Supreme Court ruled that due process required an instruction that if sentenced to life imprisonment rather than death, the defendant would not be released on parole.

Release on parole, of course, contemplates a return to non-prison society and that eventuality

was the focus of the Court's discussion. A life-serving inmate's dangerousness to prison staff and other inmates was not discussed. However, this court finds that such evidence, if properly presented, is admissible. Prison staff and inmates have the same right to be protected from inmate killers as do persons who live and work in free society.

which was committed in close proximity to her husband and two daughters" (Doc. 27 at 3). Nguyen concedes that the statute expressly allows for victim impact evidence, *see* 18 U.S.C. § 3593(a), but contends that this factor is improper, reasserting the same general arguments against non-statutory aggravating circumstances discussed earlier (Doc. 65 at 65). The court has rejected these arguments. *See* IV., A. (statutory challenge), V., A. (narrowing function challenge), *supra.*

Nguyen argues that *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), which upheld the propriety of victim impact evidence as an aggravating factor, was wrongly decided, and that an inevitable change in the membership of the Supreme Court makes the case "a subject of possible future review." This court is not receptive to this sort of argument. *Payne* is valid, controlling authority. This court cannot base its decisions upon speculation or prognostication about how higher courts may decide future cases depending upon changes in membership.

Accordingly, Nguyen's motion to strike the "victim impact evidence" factor is denied. *Accord Walker,* 910 F.Supp. at 855.

### E. "Low Potential for Rehabilitation" Factor

 The fifth non-statutory aggravating factor alleged by the government is that "[t]he defendant has a low potential for rehabilitation" (Doc. 27 at 3). Nguyen argues that this factor is irrelevant and duplicative of the "continuing threat" aggravator (Doc. 65 at 67–68). In his supplemental brief, Nguyen cites *United States v. Davis,* 912 F.Supp. 938 (E.D.La.1996) in support of his argument that the aggravator should be stricken (Doc. 106 at 7).

In *Davis,* as in this case, the government alleged "future dangerousness" and "low rehabilitative potential," along with other nonstatutory aggravating factors. *See id.* at 944, 946. In support of the latter, the govern-

ment intended to offer evidence that Davis, a former police officer, had been reprimanded and suspended, was protecting a drug trafficking ring and was willing to arrange the murder of a witness against him. *Id.* at 946. The *Davis* court found that the future dangerousness factor was proper, but dismissed the low rehabilitative potential factor:

> The term "low rehabilitative potential" is too vague. Rehabilitative potential for what? The only relevant issue would be DAVIS' rehabilitative potential for becoming a non-threat to the health and safety of others. With that limitation, it becomes the converse of future dangerousness. It may therefore be combined with the second nonstatutory factor [future dangerousness], but it is not appropriate as a separate freestanding factor. Since this is a statute in which the jury is to "weigh" aggravating factors versus mitigating factors, there is always the danger that one or more jurors will weigh by counting. Breaking out what is essentially one factor into separately itemized factors is unduly prejudicial and confusing.

*Id.; cf. Bradley,* 880 F.Supp. at 285 (government may not "assert every possible permutation of an aggravating circumstance.")

The court agrees with this analysis and finds that it is in line with the holding of *McCullah* regarding duplicative aggravating factors. As discussed *supra, McCullah* held that the use of duplicative aggravating factors under a weighing scheme unconstitutionally skews the weighing process. *See McCullah,* 76 F.3d at 1112. While "future dangerousness" and "low potential for rehabilitation" are not identical, the two factors "substantially overlap with one another." *Id.* at 1111.[15] The court is hard-pressed to imagine how a person convicted of murder who has a low potential for rehabilitation does not represent a continuing danger to the lives of others in the future. Conversely, it is tautological that a person who will repre-

---

**15.** *McCullah* found that there was sufficient evidence to support the jury's finding that "repeated attempts to rehabilitate the defendant ... or deter him from future criminal behavior have been unsuccessful." *McCullah,* 76 F.3d at 1108.

While this implies that the factor is constitutionally proper, the government did not also allege "future danger" or any similar factor as it has here. *See id.* at 1106.

sent a continuing danger to others also has a low potential for rehabilitation.

Nor can the court fathom how the evidence supporting the two factors can materially differ in this case. The court has upheld the "continuing danger" aggravating factor and, subject to the limitations already discussed, the government may submit rehabilitation evidence under that factor. The court will not allow the government, however, to stack aggravating factors by converting one factor into two.

Accordingly, Nguyen's motion to strike the "low potential for rehabilitation" factor is granted.

## VI. Arbitrary Selection for Death Penalty Prosecution

 Nguyen argues that he has been arbitrarily singled out for death penalty prosecution. He notes that this is the only Hobbs Act/commercial robbery case in which the United States has sought the death penalty based upon a *de minimis* effect on interstate commerce (Doc. 65 at 71).[16] He argues that the Department of Justice flouted its own internal guidelines, which prescribe approval [17] of a death penalty prosecution "only when the federal interest in the prosecution is more substantial than the interests of the state or local authorities." United States Attorney's Manual, § 9–10.000(F) (Doc. 65 at 72). Nguyen claims that by ignoring this guideline, the government acted arbitrarily in violation of the Eighth and Fifth Amendments.

The government responds that the decision whether or not to seek the death penalty for a death-eligible defendant is firmly within the core of prosecutorial discretion. It also notes that the Department of Justice' internal guidelines are just that—guidelines—and are immune from judicial scrutiny in the absence of a showing of invidious considerations [18] (Doc. 97 at 26–27).

 The court agrees with the government. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *see also McCleskey v. Kemp,* 481 U.S. 279, 296–97, 107 S.Ct. 1756, 1769, 95 L.Ed.2d 262 (1987) (discussing a prosecutor's wide discretion in deciding whether to seek the death penalty). The Supreme Court has also stated that it "demand[s] exceptionally clear proof before … infer[ring] that the discretion has been abused." *McCleskey,* 481 U.S. at 297, 107 S.Ct. at 1770. Nguyen offers no evidence approaching that high standard.

 Moreover, even if true, Nguyen's claim that the government did not follow its internal guidelines in deciding to seek the death penalty is presumptively unreviewable by this court. *See Heckler v. Chaney,* 470 U.S. 821, 831–32, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985); *see also Walker v. Reno,* 925 F.Supp. 124 (N.D.N.Y.1995) (dismissing civil action by criminal defendant against Attorney General seeking review of her decision to seek the death penalty; defendant

16. Nguyen embarks on a comparison of the facts of his case with other federal death penalty prosecutions, concluding that his case is one of only five against "non-triggermen" (Doc. 65 at 75–78). He states that none of these other four "non-triggerman" received the death penalty. The court is unsure of the point of his comparison, but will construe it as an attempt to highlight the egregious facts and weightier federal interests involved in these other cases. To the extent that Nguyen is inviting this court to perform a pre-trial "proportionality review", however, it declines the invitation.

17. The guidelines require prior personal approval of a death penalty prosecution by the Attorney

General of the United States. The government obtained that approval in this case. The court then appointed defendant's present counsel and, with defendant's consent, essentially put the case on hold while counsel made their case against the death penalty to Justice Department officials. The court assumes that counsel made the arguments which they now urge here.

18. The court notes that Nguyen previously raised a selective prosecution claim in this case, claiming that the government prosecuted him based on his Asian ancestry (Docs. 52, 53). The court denied his motion in a memorandum and order filed January 26, 1995 (Doc. 84 at 20–23). Nguyen raises no invidious considerations here.

asserted violation of the same internal guidelines at issue here).

Accordingly, Nguyen's motion to strike the death penalty notice for arbitrary selection for capital punishment is denied.

## VII. Fifth Amendment Indictment Clause

Nguyen argues that the notice provision in § 3593(a) violates the Fifth Amendment Indictment Clause [19] because it allows the prosecutor, rather than a grand jury, to determine whether to seek the death penalty.

A sufficient indictment under the Fifth Amendment requires that a grand jury consider and find all elements of the offenses charged. *See United States v. Brown*, 995 F.2d 1493, 1504 (10th Cir.), *cert. denied*, 510 U.S. 935, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993). The indictment must put the defendant on fair notice of the charges he must defend against, and enable him to assert an acquittal or conviction for double jeopardy purposes. *United States v. Haddock*, 956 F.2d 1534, 1542 (10th Cir.), *cert. denied*, 506 U.S. 828, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992).

Nguyen concedes that he was properly indicted by a grand jury for violations of 18 U.S.C. § 1951 and § 924(c)(1)(i)(1), but takes issue with the U.S. Attorney's decision to file a death notice pursuant to § 3593 (Doc. 65 at 82). As noted before, the decision whether to seek the death penalty is firmly within a prosecutor's discretion. *McCleskey*, 481 U.S. at 296–97, 107 S.Ct. at 1769. The factors in the death notice are not "elements of the offense charged" such that they must be presented to a grand jury. *See Buckley v. Butler*, 825 F.2d 895, 903 (5th Cir.1987) (noting in a non-

capital proceeding that "there is no Fifth Amendment right to grand jury indictment on the sentencing facts"), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988). Rather, these factors come into play only after a grand jury indicts and a *petit* jury convicts a defendant of the offenses charged. At that point, either the trial judge or the jury may render sentence, including a sentence of death. 18 U.S.C. § 3593(b); *see Harris v. Alabama*, —— U.S. ——, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Defendant cites no convincing authority, [20] nor has the court been able to locate any, which requires that the death notice be presented before a grand jury.

Accordingly, Nguyen's motion to dismiss the death notice as unconstitutional under the Fifth Amendment Indictment Clause is denied.

## VIII. Specificity of Notice of Intent to Seek the Death Penalty

Nguyen argues that the government's notice of intent to seek the death penalty is unconstitutional because it lists only the aggravating circumstances and provides no detail about the evidence the government intends to offer in support (Doc. 65 at 86). He cites Fed.R.Crim.P. 7, which by its terms, applies only to "indictments and informations." There is no authority indicating that the rule applies to death notices.

Similarly, the only other authority Nguyen cites is inapposite. In *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (opinion of Stevens, Stewart, Powell, JJ.), the Supreme Court held that the defendant's due process rights were violated when the trial judge imposed a death sentence based on confidential information not dis-

19. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury." U.S. Const. Amend. V. As Nguyen notes, this issue has not arisen in state cases because the Indictment Clause has not been incorporated under the Fourteenth Amendment and applied to the states.

20. Nguyen argues that *Smith v. United States*, 360 U.S. 1, 79 S.Ct 991, 3 L.Ed.2d 1041 (1959), read in light of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), requires

the result he requests (Doc. 65 at 83–84). The court disagrees. *Smith* held that in a prosecution where the potential punishment is death, the government must charge the defendant by indictment before a grand jury, rather than by information. That is what occurred here: Nguyen was charged by indictment before a grand jury with an offense where the potential punishment is death. Nor can the court see why *Furman* implicates the process of *charging* a defendant with an offense punishable by death. Nguyen's argument simply attempts to prove too much.

closed to the defendant or his counsel. *Gardner* has nothing to do with the particularity of a death notice, nor is it possible for a situation like that in *Gardner* to arise here. Moreover, as the government notes (Doc. 97 at 35), there is persuasive authority to the contrary. *See Cooper,* 754 F.Supp. at 621, n. 7, 635–37.

Accordingly, Nguyen's motion to strike the death notice as constitutionally insufficient is denied.[21]

## IX. Evidentiary Standard for the Sentencing Hearing

■ Nguyen argues that the relaxed evidentiary standard available to the government at the penalty phase of the trial is unconstitutional, because it fails the heightened reliability standard required by the Eighth Amendment in capital proceedings (Doc. 65 at 78). *See Lowenfield,* 484 U.S. at 238–39, 108 S.Ct. at 551 (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed.") (quoting *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978)).

Section 3593(c) provides:

The government may present any information [at the penalty hearing] relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropri-

ateness in the case of imposing a sentence of death.

18 U.S.C. § 3593(c). Thus, any evidence presented must be relevant, reliable and its probative value must outweigh any danger of unfair prejudice.

While the court agrees that heightened reliability is essential to the capital process, it must be balanced with the need for a jury to have ample information regarding the offense and offender in order to make an individualized sentencing determination.[22] In *Gregg v. Georgia,* 428 U.S. 153, 204, 96 S.Ct. 2909, 2939–40, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.), a plurality of the Supreme Court noted that the jury should have as much information before it as possible: "So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions." *Id.* at 204, 96 S.Ct. at 2939; *see also, Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958 (noting that it was "essential" that the jury "have before it all possible relevant information about the individual whose fate it must determine.") The court finds that § 3593(c) comports with *Gregg* and *Jurek,* and is therefore constitutional.

Moreover, as the government notes, the federal district courts addressing the similar provision in 21 U.S.C. § 848(j) have found that it ensures sufficient reliability and have upheld its constitutionality (Doc. 97 at 30). *See DesAnges,* 921 F.Supp. at 354–56; *Walker,* 910 F.Supp. at 852–54; *Bradley,* 880 F.Supp. at 288–91; *Pitera,* 795 F.Supp. at 564–66; *Pretlow,* 779 F.Supp. at 769–71. A comparison between § 848(j) and 18 U.S.C. § 3593(c) reveals that the latter offers an even more protective standard. Section 848(j) directly mirrors Fed.R.Evid. 403, in that "information may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." 21 U.S.C.

---

**21.** Nguyen's motion for discovery regarding evidence supporting the death notice (Doc. 68) and for a bill of particulars (Docs. 69, 70) will be addressed under the "Discovery and Related Motions" heading, *infra.*

**22.** This balancing is probably more properly characterized as a tension. *See, e.g., Walton v. Arizona,* 497 U.S. 639, 656, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990) (Scalia, J., concurring); *see generally,* Stephen R. McAllister, *The Problem of Implementing a Constitutional System of Capital Punishment,* 43 Kan.L.Rev. 1039 (1995).

§ 848(j) (emphasis added); *see* Fed.R.Evid. 403. Section 3593(c) does not share the same bias towards inclusion, providing instead that "information may be excluded if its probative value is outweighed by the danger of unfair prejudice." 18 U.S.C. § 3593(c); *see Davis,* 904 F.Supp. at 561 (contrasting § 3593(c) with Fed.R.Evid. 403). Thus, if § 848(j) passes constitutional muster under the "heightened reliability" standard required by cases such as *Lowenfield* and *Lockett,* then § 3593(c)'s more protective standard passes muster *a fortiori.*

Accordingly, Nguyen's argument that 18 U.S.C. § 3593(c) is unconstitutional is denied. *Accord Davis,* 904 F.Supp. at 562.

## X. Mitigating Evidence

▪ Nguyen argues that 18 U.S.C. § 3593(f), which provides for jury certification that its verdict was not influenced by improper factors such as race or national origin, is unconstitutional because it does not allow a jury to consider such factors as mitigating (Doc. 65 at 94).

Section 3593(f) provides:

**Special precaution to ensure against discrimination.**—In a hearing held before a jury, the court, prior to the return of a finding under subsection (e) [recommendation of sentence], shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be. The jury, upon return of a finding under subsection (e), shall also return to the court a certificate, signed by each juror, that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

18 U.S.C. § 3593(f).

▪ The court disagrees with Nguyen's interpretation of the statute. In construing a statute, the court is mindful of the canon that "an Act of Congress ought not to be construed to violate the Constitution if any other possible construction remains available." *Rust v. Sullivan,* 500 U.S. 173, 190, 111 S.Ct. 1759, 1771, 114 L.Ed.2d 233 (1991) (citations omitted). A capital defendant must be allowed to present any mitigating factors relevant to his character or the circumstances of his crime. *See McCleskey,* 481 U.S. at 305–06, 107 S.Ct. at 1774–75; *Lockett,* 438 U.S. at 605, 98 S.Ct. at 2965; 18 U.S.C. § 3592(a)(8). It is clear that the intent of Congress in enacting this section was to preclude the improper consideration of these factors as aggravating, not to preclude their *proper* consideration as mitigating. *Accord Davis,* 904 F.Supp. at 563 (section 3593(f) "specifically states that the jury is to reject ... personal characteristics only in considering whether death is justified. The jury is not instructed to disregard those factors in favoring life instead of death.").

Moreover, federal district courts facing similar arguments about the parallel provision of 21 U.S.C. § 848(o) have unanimously held that the section does not preclude consideration of the listed factors in mitigation. *See Walker,* 910 F.Supp. at 857; *Bradley,* 880 F.Supp. at 291; *Pretlow,* 779 F.Supp. at 775–76; *Cooper,* 754 F.Supp. at 624.

Accordingly, Nguyen's motion to strike the death notice for not allowing consideration of certain mitigating evidence is denied.

## XI. Cruel and Unusual Punishment

Nguyen contends that the death penalty in general is cruel and unusual punishment violating the Eighth Amendment (Doc. 65 at 96). The court notes Nguyen's argument, but finds that it is contrary to controlling authority. *See McCleskey,* 481 U.S. at 296–97, 300–02, 107 S.Ct. at 1769–70, 1771–72; *Gregg,* 428 U.S. at 169, 187, 96 S.Ct. at 2923, 2932.

Accordingly, Nguyen's motion to strike the death notice as cruel and unusual punishment is denied.

## XII. Meaningful Appellate Review [23]

 Nguyen contends that the death penalty statute is unconstitutional because 18 U.S.C. § 3595 fails to provide heightened reliability, meaningful appellate review and equal protection of the laws (Doc. 65 at 90). First, Nguyen argues that § 3595(a) is deficient because it fails to provide for automatic appellate review. Rather, review is conditioned upon a defendant filing a timely notice of appeal. 18 U.S.C. § 3595(a). While the Supreme Court has discussed automatic appellate review with favor, *see, e.g., Gregg,* 428 U.S. at 198, 96 S.Ct. at 2937, Nguyen has offered no authority suggesting that it is constitutionally mandated under the heightened reliability standard. The court finds that § 3595(a) is constitutionally sufficient. *Accord Davis,* 904 F.Supp. at 562.

 Second, Nguyen contends that the statute fails to provide meaningful appellate review because it limits the scope of that review to three subjects: the presence of wholly arbitrary factors, sufficiency of the evidence, and properly preserved legal errors requiring reversal (Doc. 65 at 93). *See* 18 U.S.C. § 3595(c)(2)(A)–(C). "[M]eaningful appellate review . . . ensur[es] that the death penalty is not imposed arbitrarily or irrationally." *Parker v. Dugger,* 498 U.S. 308, 321, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991) (citations omitted). Again, the court construes a statute in harmony with the Constitution if it is reasonably possible to do so. *Rust,* 500 U.S. at 190, 111 S.Ct. at 1771. Section 3595(b) expressly mandates review of the entire record by the court of appeals. Section 3595(c)(1) further mandates that the court of appeals "shall address all substantive and procedural issues raised." More-

over, the court of appeals reviews a sentence of death for the "influence of passion, prejudice or any other arbitrary factor." 18 U.S.C. § 3595(c)(1).

Nguyen reads the statute as foreclosing review for "plain error" in contravention of Fed.R.Crim.P. 52(b) (Doc. 65 at 94). The court disagrees. Section 3595(c)(2)(C) provides for review of error "properly preserved for appeal under the rules of criminal procedure." Nothing suggests that the court of appeals would not review for plain error pursuant to Fed.R.Crim.P. 52(b). In sum, this review is "exhaustive," *Davis,* 904 F.Supp. at 562, and easily satisfies the Supreme Court's requirement of "meaningful appellate review." [24]

 Finally, Nguyen contends that § 3595 violates equal protection because it "single[s] out one class of inmates for diminished review while leaving open existing remedies to all other federal prisoners" (Doc. 65 at 94). The court disagrees. Section 3595(a) expressly authorizes a parallel conventional appeal from a judgment of conviction. 18 U.S.C. § 3595(a). Thus, review of a capital defendant's case is enhanced rather than diminished.

Accordingly, Nguyen's motion to strike the death notice because it does not provide meaningful appellate review is denied.

### Discovery and Related Motions

Nguyen has filed several motions requesting discovery and a bill of particulars regarding evidence that the government intends to present at the penalty phase of trial. Nguyen already made many of these same requests regarding the guilt phase, and the court extensively addressed those requests in its Memorandum and Order filed January 26, 1996 ("Order of January 26") (Doc. 84).[25] The court will often refer to and incorporate portions of that Order here.[26]

---

**23.** This court understands the need for Nguyen to make his record on this contention so as to preserve it for appellate review. Nevertheless, this court believes the contention is more appropriate for appellate consideration in the event of conviction and a sentence of death.

**24.** Moreover, as the government notes (Doc. 97 at 37), the language of § 3595(c)(2)(A)–(C) tracks

that of the Georgia statute approved in *Gregg. See Gregg,* 428 U.S. at 166–167, 96 S.Ct. at 2922.

**25.** Nguyen filed the present requests before the court filed its Order of January 26.

**26.** While the federal death penalty statute provides evidentiary standards for the sentencing hearing (or a lack thereof), *see* 18 U.S.C.

## I. Interviews of Those Persons That the Government Will Not Call as Witnesses

 Nguyen requests the court to order the government to produce all "interviews, memoranda, and reports from interviews" made with those persons that the government has determined not to call as witnesses (Doc. 63 at 1). The government responds that to the extent the requested material is exculpatory under *Brady* and its progeny, it will make full disclosure. It notes that the remaining requested material need not be disclosed pursuant to Fed.R.Crim.P. 16(a)(2) (Doc. 92 at 1–2).

The court agrees with the government. Nguyen has already requested the names and addresses of persons that the government does *not* intend to call as witnesses (Doc. 22 at 6). In its Order of January 26, the court denied this request, except to the extent that the material was exculpatory under *Brady* (Doc. 84 at 12–13). The same reasoning applies here. The court has already ordered the government to comply with Nguyen's general *Brady* requests (*Id.* at 8).[27]

Accordingly, Nguyen's request for interviews, memoranda, and reports from interviews made with those persons that the government does not intend to call at trial is denied.

## II. Discovery and Bill of Particulars Regarding the Government's Evidence in Support of the Aggravating Factors

Nguyen repeats most of the same general discovery requests he made regarding the guilt phase of trial, tracking the language of Fed.R.Crim.P. 16 (Doc. 68). The government states that although it need not do so, it will turn over Jencks Act materials and physical evidence outside the purview of Rule 16 ten days before trial (Doc. 95 at 3–4).

While Nguyen's present requests are couched in terms of evidence to be offered at the sentencing phase, the court sees no reason why its Order of January 26 does not dispose of them. *See* Doc. 84 at 5–16, 16–19. To that extent, the motions have already been ruled upon. To the extent that Nguyen raises new arguments, the court will address them here.

 Nguyen contends that the notice provisions of 18 U.S.C. § 3593 require that the government give adequate notice of the information it intends to use in support of the aggravating factors (Doc. 68 at 6). Nguyen implies that "adequate notice" means immediate disclosure. He contends that this result is required by the Due Process Clause of the Fifth Amendment (*Id.* at 6).

The death penalty notice provision provides in relevant part:

> [T]he [government] attorney shall, a reasonable time before the trial ... sign and file with the court, and serve on the defendant, a notice—
>
> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
>
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

§ 3593(c), it provides no standards for discovery. Thus, the court sees no reason why the same discovery rules and statutes applicable at the guilt phase of trial (and the same applied in its Order of January 26) would not apply here. *See*, Fed.R.Crim.P. 7; Fed.R.Crim.P. 16; 18 U.S.C. § 3500 ("Jencks Act").

27. Nguyen implies, however, that strictly speaking, *Brady* and its progeny do not require *pretrial* disclosure of exculpatory evidence. A quick examination of post-*Brady* authority, especially that cited in the court's Order of January 26 (Doc. 84 at 8), *United States v. Agurs*, 427 U.S. 97, 103, 96

S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *United States v. Bishop*, 890 F.2d 212, 218 (10th Cir. 1989), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990), appears to support this view. Nguyen argues that pretrial disclosure of *Brady* material is necessary for effective use of the material at trial (Doc. 63 at 4).

Although probably unnecessary, the court notes for purposes of clarification that it construes its previous order as a continuing obligation on the government's part to disclose *Brady* material if and when discovered.

18 U.S.C. § 3593(a). The subsection further provides that the government "may include ... any other relevant information." *Id.*

The death notice filed against Nguyen (Doc. 27) fully complies with the statute. It states that the government intends to seek the death penalty and sets forth the aggravating factors that the government intends to prove. The statute requires no more.[28]

 Nor has Nguyen provided any constitutional authority supporting pre-trial discovery of evidence in aggravation. To the contrary, there is authority holding that the Constitution is not offended even if a capital defendant is not informed of the aggravating circumstances on which the government will rely. *See Clark v. Dugger,* 834 F.2d 1561, 1566 (11th Cir.1987) (defendant has no constitutional right to advance notice of the aggravating circumstances), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988). *A fortiori,* Nguyen cannot complain, at least in constitutional terms, about the government not disclosing evidence supporting the aggravating factors.

Nguyen cites *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991), and attempts to extend its holding to support his argument. In *Lankford,* the defendant was convicted of a crime punishable by death. The trial court ordered the state to notify the court and the defendant whether it would seek the death penalty, and if so, the aggravating circumstances on which it intended to rely. *Id.* at 114, 111 S.Ct. at 1726. The state responded that it would *not* be seeking the death penalty. *Id.* at 114–15, 111 S.Ct. at 1726. At the sentencing hearing, neither the state nor the defendant discussed the death penalty as a possible sentence, arguing instead about the length of the sentence to be imposed. *Id.* at 115–16, 111 S.Ct. at 1727. The trial judge sentenced the defendant to death. *Id.* at 117, 111 S.Ct. at 1728.

The Supreme Court noted that as a factual matter, it was "undisputed that the character of the sentencing proceeding did not provide petitioner with any indication that the trial judge contemplated death as a possible sentence." *Id.* at 119, 111 S.Ct. at 1729. The Supreme Court reversed the death sentence, holding that "[p]etitioner's lack of adequate notice that the judge was contemplating the imposition of the death sentence created an impermissible risk that the adversary process may have malfunctioned in this case." *Id.* at 127, 111 S.Ct. at 1733.

The concerns in *Lankford* are not implicated here. The government properly informed Nguyen that it would seek the death penalty and the aggravating circumstances that it intended to rely upon on June 1, 1995.

Accordingly, Nguyen's motion for pre-trial discovery of the government's evidence in

---

**28.** Nguyen cites several state court decisions in support of his argument (Doc. 68 at 8, 9). The court has read these decisions and finds that they are distinguishable. The first case Nguyen relies upon was reversed, and should not have been cited in his brief. *See People v. Walker,* 41 Cal.3d 116, 222 Cal.Rptr. 169, 711 P.2d 465 (1985), *rev'd,* 47 Cal.3d 605, 253 Cal.Rptr. 863, 765 P.2d 70 (1988) (holding that notice was sufficient), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990).

Most of the remaining decisions cited based their holdings upon state death notice statutes which expressly require specification of evidence in aggravation. *See, e.g., Wright v. State,* 255 Ga. 109, 335 S.E.2d 857, 863 (1985) (relying on Ga.Code § 17–10–2, which provided that "only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible."); *State v. Timmons,* 192 N.J.Super. 141, 469 A.2d 46, 47 (1983) (relying on New Jersey Court Rule 3:13–4(a)); *Wilson v. State,* 756 P.2d 1240, 1244–45 (Okla.Crim.App. 1988) (relying on Okla.Stat. tit. 21, § 701.10 (1981) and Okla. Const. art. II, § 20); *Green v. State,* 713 P.2d 1032, 1038 (Okla.Crim.App.1985) (same), *cert. denied,* 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986), *overruled on other grounds by, Brewer v. State,* 718 P.2d 354 (Okla. Crim.App.1986); *State v. Riddle,* 291 S.C. 232, 353 S.E.2d 138, 141 (1987) (relying on S.C.Code Ann. § 16–3–20), *overruled on other grounds by, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (S.C.1991).

The remaining cases are distinguishable simply on their facts or procedural context. *Ex parte Monk,* 557 So.2d 832 (Ale.1989) (upholding judge's order that the state maintain an open file policy); *State v. Hamilton,* 478 So.2d 123, 131–32 (La.1985) (defendant's bill of particulars questioned whether the prosecutor intended to offer evidence of other crimes and the prosecutor answered in the negative, then proceeded to offer evidence in the penalty phase of another crime), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

support of the aggravating factors is denied. *Accord Cooper*, 754 F.Supp. at 621.

Nguyen also requests the name, address and phone number of the government's witnesses as well as additional information about these witnesses, including how they are connected to the crime or punishment (Doc. 68 at 3–4). Relatedly, Nguyen filed a separate motion for immediate disclosure of the government's witness list pursuant to § 3432 (Docs. 73, 74). The government responds that it will provide a witness list three days before trial as required by § 3432 (Doc. 95 at 4; Doc. 90 at 2).

■■■ The court already addressed similar requests in its Order of January 26 (Doc. 84 at 12–14). The court reserved any discussion of 18 U.S.C. § 3432 (*Id.* at 14 n. 3), however, and will discuss the statute at this time.

The statute provides:

> A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness, except that such list of the veniremen and witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.

18 U.S.C. § 3432.

■■■ The purpose of the statute "is to inform the defendant of the testimony which he will have to meet, and to enable him to prepare his defense." *United States v. Chandler*, 996 F.2d 1073, 1098 n. 6 (11th Cir.1993) (quoting *Logan v. United States*, 144 U.S. 263, 304, 12 S.Ct. 617, 630, 36 L.Ed. 429 (1892), *overruled on other grounds,*

*Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)). The government has indicated that it will comply with the statute.

Nguyen emphasizes that the statute states "*at least* three days" and asks the court to order early disclosure. He argues that while three days may have been sufficient time for preparation when the statute was enacted in 1948, the complexities of present day capital cases suggest that the time should be lengthened (Doc. 68 at 3–4; Doc. 74 at 1). The court disagrees with this extrapolation. Congress amended the statute in 1994 to add the exception clause for witness safety. 18 U.S.C. § 3432, *as amended by*, Act of Sept. 13, 1994, Pub.L. No. 103–322, Title VI, § 60025, 108 Stat.1982. At that time, if Congress had wished to extend the time period beyond three days to account for modern complexities, it certainly could have done so.

Accordingly, Nguyen's motion for early disclosure of the government's witness list pursuant to 18 U.S.C. § 3432 is denied.[29]

■■■ Finally, Nguyen requests a bill of particulars regarding the evidence the government intends to offer in support of the aggravating factors (Doc. 69, 70). The government responds that the superseding indictment and notice to seek the death penalty sufficiently apprise Nguyen of the charges he must face (Doc. 94).

■■■ It is within the court's discretion whether or not to order a bill of particulars. Fed.R.Crim.P. 7(f). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense...." *United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir.1995) (quoting *United States v. Levine*, 983 F.2d 165, 166–67 (10th Cir. 1992)). The purpose of a bill of particulars is *not* to obtain discovery, evidentiary detail of

---

**29.** The court notes one final matter regarding § 3432. The government made a previous *in camera* submission regarding the safety of one of its witnesses. In the government's more recent response, it indicates its continued concern about witness safety (Doc. 90 at 2). The court noted in its Order of January 26 that it shared the government's concern, and thus, it would not exercise its discretion to order early disclosure of the government's witness list (Doc. 84 at 13–14).

The court did not find, however, under a preponderance of the evidence standard, that providing the witness list pursuant to § 3432 may jeopardize the safety of any witness. In other words, if the government wishes to argue the exception to § 3432, it must submit further proof *in camera*. The court reserves making a finding on this issue until a date nearer to trial.

the government's case, or information regarding the government's legal theories. *United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir.1983).

The court finds that the indictment and notice of intent to seek the death penalty sufficiently apprise the defendant of the charges that he must be prepared to meet. Nguyen essentially argues that because this is a capital case, he is entitled to full evidentiary detail of the government's case. Aside from his citation of *Lankford,* which as the court discussed earlier is inapposite, Nguyen offers no authority supporting his position, and the court has been unable to locate any. Moreover, the court notes that Nguyen has been provided with ample resources to aid in his investigation.

Accordingly, Nguyen's motion for a bill of particulars is denied.

### III. Discovery of Evidence in Mitigation

Nguyen argues that the government should be required to disclose any evidence in its possession that is mitigating (Docs. 71, 72). The government responds that it has no objection to disclosing evidence in mitigation, and believes that it has already done so (Doc. 91).

The court feels that it has already addressed this issue in its Order of January 26 ordering the government to disclose *Brady* material (Doc. 84 at 8). To that extent, Nguyen's motion is granted.

### IV. Discovery Regarding Government's Initial Recommendation to Seek the Death Penalty

 Nguyen requests disclosure of documents supporting the government's recommendation to seek the death penalty in this case pursuant to the Fifth and Eighth Amendments (Docs. 75–76). He reasserts the same argument advanced in his omnibus motion to strike the death notice, *i.e.,* that he has been arbitrarily singled out for death penalty prosecution (Doc. 76 at 1; Doc. 65 at 72). *See* section VI., *supra.* In the alternative, he asks the court to review these materials *in camera* for exculpatory evidence or any evidence of invidious considerations.

Not surprisingly, he offers no authority supporting these requests.

The government responds that these requests are precluded by Fed.R.Crim.P. 16(a)(2), governing internal government documents (Doc. 93 at 2). The government also lists in its response the mitigating factors that it disclosed to the Department of Justice, and reasserts that it will or has disclosed all exculpatory information (Doc. 93 at 4–5). The court finds the government's response sufficient, especially in light of the court's earlier discussion at section VI., *supra.*

Accordingly, Nguyen's motion for discovery regarding the government's initial recommendation to seek the death penalty or for an *in camera* review is denied.

IT IS SO ORDERED.